**MAY FOLEY & LARDNER LLP**
ONE MARITIME PLAZA, SIXTH FLOOR
SAN FRANCISCO, CA 94111-3409
TELEPHONE:    415.434.4484
FACSIMILE:    415.434.4507

LAURENCE R. ARNOLD, CA BAR NO. 133715
LARNOLD@FOLEY.COM
EILEEN R. RIDLEY, CA BAR NO. 151735
ERIDLEY@FOLEY.COM
SCOTT P. INCIARDI, CA BAR NO. 228814
SINCIARDI@FOLEY.COM

Attorneys for STANFORD HOSPITAL & CLINICS and
LUCILE PACKARD CHILDREN'S HOSPITAL

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715<br><br>Petitioner,<br><br>vs.<br><br>STANFORD HOSPITAL & CLINICS and LUCILE PACKARD CHILDREN'S HOSPITAL<br><br>Respondents. | Case No:  5:08-CV-00216-JF<br><br>STANFORD HOSPITAL AND CLINICS AND LUCILE PACKARD CHILDREN'S HOSPITAL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF CLAIMS OR DEFENSES<br><br>[FED. RULE OF CIV. P. 56]<br><br>Date:        August 29, 2008<br>Time:        9:00 A.M.<br>Dept:        Ctrm. 3, 5th Floor<br><br>Judge:        Hon. Jeremy Fogel |
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715<br><br>Petitioner,<br><br>vs.<br><br>STANFORD HOSPITAL & CLINICS and LUCILE PACKARD CHILDREN'S HOSPITAL<br><br>Respondents. | Case No:  5:08-CV-01726-JF<br><br><br><br>Judge:        Hon. Jeremy Fogel |

SFCA_1424228.4

| | | |
|---|---|---|
| 1 | | |
| 2 | SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715 | Case No: 5:08-CV-01727-JF |
| 3 | Petitioner, | |
| 4 | vs. | |
| 5 | STANFORD HOSPITAL & CLINICS and | |
| 6 | LUCILE PACKARD CHILDREN'S HOSPITAL | |
| 7 | Respondents. | Judge:      Hon. Jeremy Fogel |
| 8 | | |

9   ///
10  ///
11  ///
12  ///
13  ///
14  ///
15  ///
16  ///
17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1424228.4

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION AND SUMMARY OF THE ARGUMENT ............................ 1

II.  STATEMENT OF FACTS ...................................................................... 2

    A.  The Certification And Collective Bargaining Agreement ...................... 3

    B.  The Grievances ................................................................................ 3

    C.  Beginning In Early 2006, The Hospitals Were Presented With Increasing Evidence That Local 715 Had Ceased To Exist And/Or Had Transferred Its Representative Duties To UHW ............................ 4

        (1)  Local 715 Enters Into A "Servicing Agreement" With UHW .......... 4

        (2)  In March, 2006, UHW Assumes Local 715's Functions .................. 5

        (3)  Between March and May, 2006, UHW Employees Continue To Carry Out Local 715's Functions, And Evidence Surfaces That Local 715 Was Defunct .................... 5

        (4)  The Hospitals Refuse To Deal With UHW Employees .................... 6

        (5)  SEIU Implements A Plan To Reorganize SEIU Locals ................... 7

        (6)  The Hospitals Determine That The Servicing Agreement Is Not Legitimate. ...................... 7

        (7)  In Early 2007, Local 715 Prepares To Disband Itself And Its Representatives Confirm That It Has Ceased To Exist .................... 8

        (8)  The Hospitals Cease Remitting Dues To Local 715 In Light Of The Evidence That It Has Ceased To Exist ................................ 10

        (9)  In June, 2007, "Local 715" Is Purportedly Placed Under Trusteeship, And The Trustee Appoints New Counsel .................. 11

        (10) Weinberg Attorneys Continue To Act On Behalf Of "Local 715", But Refuse To Clarify Their Representative Capacity ......... 12

        (11) The Hospitals Make Formal Information Requests Pursuant To The NLRA ...................... 12

III.  DISCUSSION ................................................................................. 13

    A.  Legal Standards Applicable To Summary Judgment Motions .................. 13

    B.  The Hospitals Are Not Required To Arbitrate The Grievances Because Local 715 Has Effectively Ceased To Exist ................................ 14

SFCA_1424228.4

(1)   SEIU Adopted And Implemented A Plan That Expressly Called For The Dismemberment And Dissolution Of Local 715 ............................................................................... 15

(2)   The Bulk Of Local 715's Former Membership And Functions Were Merged Into Local 521 ............................................................ 16

(3)   Local 715's Private Hospital Members And Functions Were Transferred To UHW ................................................................ 16

    a)   Under The Guise Of An Invalid Servicing Agreement, Local 715 Assigned Its Representative Functions To UHW ................................................................... 17

    b)   UHW Began Receiving Dues Deducted From Bargaining Unit Members Paychecks .................................. 18

    c)   Bargaining Unit Employees Were Asked To Agree To Change Their Union Affiliation To UHW ........................... 18

    d)   President Stern Ordered The "Reorganization" Of Local 715 Into UHW, And Chief Shop Steward Robert Rutledge Admitted That Local 715 Had Ceased To Exist ...................................................................... 18

    e)   "Local 715" Is Represented By UHW's Legal Counsel ....... 19

    f)   UHW Holds Itself Out As The Representative Of The Bargaining Unit .................................................... 19

(4)   As Local 715 Has Effectively Ceased To Exist, The Hospitals Have No Obligation To Arbitrate The Simien, Satuito or Andrade Grievances ........................................................ 20

(5)   The Maintenance Of Local 715 As A Sham Organization Does Not Change The Result ................................................... 20

C.   Whether Or Not Local 715 Continues To Exist, The Hospitals Are Not Required To Participate In Grievance And/Or Arbitration Proceedings With Representatives Of UHW .............................. 21

D.   If The Court Decides That These Cases Present A Representational Issue On Which It Should Not Rule, It Should Issue A Stay ................ 23

IV.   CONCLUSION ................................................................. 24

SFCA_1424228.4

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...................................................................................14

*Brooks v. National Labor Relations Board*,
    348 U.S. 96 (1954).....................................................................................14

*Celotex Corporation v. Catrett*,
    477 U.S. 317 (1986)...................................................................................14

*Hotel Employees, Restaurant Employees Union, Local 2 v. Marriott Corporation*,
    961 F.2d 1464 (9th Cir. 1992) ..................................................................23

*International Brotherhood Of Boilermakers, Iron Ship Builders, Black-Smiths, Forgers
And Helpers, AFL-CIO v. Local Lodge D354*,
    897 F.2d 1400 (7th Cir. 1990) ..................................................................15

*Local No 3-193 International Wood-Workers Of America v. Ketchikan Pulp Company*,
    611 F.2d 1295 (9th Cir. 1980) ..................................................................23

*Lorber Industries Of California v. Los Angles Printworks Corporation*,
    803 F.2d 523 (9th Cir. 1986) ....................................................................14

*Matushita Electric Industrial Company v. Zenith Radio Corporation*,
    475 U.S. 574 (1985)...................................................................................14

*Medo Photo Supply Corporation v. National Labor Relations Board*,
    321 U.S. 678 (1944)...................................................................................14

*Moruzzi v. Dynamics Corporation Of America*,
    443 F.Supp. 332 (S.D.N.Y. 1977) ...........................................14, 15, 21, 23

*National Labor Relations Board v. Safeway Stores, Inc.*,
    622 F.2d 425 (9th Cir. 1980) ....................................................................13

*Pioneer Inn Associates v. National Labor Relations Board*,
    578 F.2d 835 (9th Cir. 1978) ....................................................................14

**REGULATORY CASES**

*Goad Company*,
    333 NLRB 677 (2001) ...............................................................................22

SFCA_1424228.4

*Nevada Security Innovations, Ltd.*,
    341 NLRB 953 (2004) ..................................................................................................14

*Sherwood Ford, Inc*,
    188 NLRB 131 (1971) ..................................................................................................22

*Sisters Of Mercy Health Corporation*,
    277 NLRB 1353 (1985) ................................................................................................15

**FEDERAL STATUTES**

29 U.S.C. § 185 ....................................................................................................................23

**RULES**

Fed.R.Civ.P.
    Rule 56 ..............................................................................................................1, 14
    Rule 56(c) ................................................................................................................13

SFCA_1424228.4

**NOTICE OF MOTION AND MOTION**

TO THE PETITIONER AND ITS ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on August 29, 2008 at 9:00 AM, or as soon thereafter as counsel may be heard by the above-entitled Court, located at 280 South 1st Street, San Jose, CA 95113, 5th Floor, Courtroom 3, Respondents Stanford Hospital & Clinics and Lucile Packard Children's Hospital (the "Hospitals") will and hereby do move the Court for summary judgment or, in the alternative, summary adjudication of claims or defenses (the "Motion") pursuant to Federal Rule of Civil Procedure ("Fed. Rule of Civ. P.") 56.

By this Motion, the Hospitals seek an order by this Court denying the Petitions of Service Employees International Union, Local 715 ("Local 715") and holding that the Hospitals are entitled to judgment as a matter of law in Case Nos. 5:08-CV-00216-JF ("Simien"),  5:08-CV-01726-JF ("Satuito"), and 5:08-CV-01727-JF ("Andrade") on the grounds that the Hospitals cannot be compelled to arbitrate the matters at issue because Local 715 has ceased to exist or, in the alternative, that the entity or persons seeking to arbitrate with the Hospitals are not Local 715 and therefore lack standing to require the Hospitals to arbitrate. This Motion is based upon this notice of motion and motion, the accompanying memorandum of points and authorities, the declarations of Laurie J. Quintel, Laurence R. Arnold, and Scott P. Inciardi, all pleadings and papers on file in this action and upon such other matters as may be presented to the Court at the time of the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT**

This action concerns the issue of whether the respondents, Stanford Hospital & Clinics and Lucile Packard Children's Hospital (the "Hospitals") are required to participate in arbitration with the petitioner, Service Employees International Union, Local 715 ("Local 715") pursuant to a collective bargaining agreement (the "CBA").  The Hospitals do not dispute that the matters that would be arbitrated, grievances over employment actions taken with respect to current or former Hospital employees by the name of John Simien (the "Simien Grievance"), James Satuito (the "Satuito Grievance") and Jesus Andrade (the "Andrade Grievance) are within the scope of

1

issues that are arbitrable under the CBA.  There is, however, a threshold factual determination that must be made before the Hospitals can be required to arbitrate the matters – that determination being the identity of the party seeking to require the Hospitals to arbitrate.  It is this issue that is addressed in the present motion.

It is indisputable that the only entity with which the Hospitals are obligated to arbitrate is Local 715.  It is Local 715 that was certified as the exclusive representative of the relevant bargaining unit of Hospital employees (the "Bargaining Unit") under the CBA.  Indeed, Local 715 was the signatory to the CBA that creates the obligation to arbitrate.  However, as the Hospitals will demonstrate, as a result of a plan implemented by the Service Employees International Union ("SEIU" or the "International"), as of approximately March 1, 2007, Local 715 effectively ceased to exist.

As a result of SEIU's actions most, if not all, of Local 715's former assets and functions were transferred to a new local union known as Service Employees International Union, Local 521 ("Local 521").  Additionally, under the guise of an invalid "Servicing Agreement," Local 715's representative duties were wholly transferred to a local union known as Service Employees International Union, United Healthcare Workers – West ("UHW").

Under the National Labor Relations Act (the "NLRA" or "Act") the Hospitals are required to recognize Local 715, and no other organization, as the bargaining representative of its employees.  Additionally, the CBA obligates the Hospitals to arbitrate disputes with Local 715, and no other.  As Local 715 effectively ceased to exist as a viable labor organization, the Hospitals can have no obligation to arbitrate with it.  Furthermore, whether or not Local 715 continues to exist, the Hospitals cannot be forced to arbitrate with representatives of UHW.  The Hospitals, therefore, seek an order denying Local 715's petitions to compel arbitration and dismissing the above referenced actions.

## II.    <u>STATEMENT OF FACTS</u>

The following facts cannot genuinely be disputed and are material to the issues raised in the Simien, Andrade and Satuito actions.

///

SFCA_1424228.4

1

2

### A.    The Certification And Collective Bargaining Agreement

In 1998, after a National Labor Relations Board (the "Board")-conducted election, the

Board issued an order certifying "Local 715, Service Employees International Union, AFL-CIO"

as the "exclusive collective bargaining representative" of a unit of Hospital employees described

in the order (the "Certification")[1].  [Declaration of Laurence R. Arnold In Support Of Motions

("Arnold Decl.") ¶ 2-3 & Exh. A.]  Pursuant to the Certification, the Hospitals recognized Local

715 as the exclusive bargaining representative and subsequently negotiated a series of collective

bargaining agreements.  [Arnold Decl. ¶ 4.]  The current CBA became effective on January 20,

2006, and is scheduled to expire on November 4, 2008.  [Arnold Decl. ¶ 4.]  Article 1.1 of the

CBA states that the CBA "is made and entered into between Stanford Hospital and Clinics

(SHC) and Lucile Packard Children's Hospital (LPCH) . . . and the Service Employees

International Union, Local 715, AFL-CIO, CLC (hereinafter referred to as "Union")."  [Arnold

Decl. ¶ 4-6 & Exh. B.]  Article 1.3.1 of the CBA contains a "Recognition Clause," which states

that, pursuant to the Board's Certification, "the Employer recognizes the Union, as the sole and

exclusive representative for the purpose of collective bargaining" with respect to Bargaining Unit

employees.  [Arnold Decl. ¶ 4-6 & Exh. B.]

Article 26 of the CBA contains a grievance and arbitration procedure through which

alleged violations of the CBA may be challenged.  [Arnold Decl. ¶ 8 & Exh. B.]  Article 26.2.1

of the CBA states that "The Union" (i.e. Local 715) "will have the right to present grievances

under this procedure on behalf of an individual employee, on behalf of a group of employees, or

on behalf of itself as a Union grievance."  [Arnold Decl. Exh. B.]  Article 26.2.3.e provides that

"only the Union" (Local 715) "may appeal a grievance to arbitration."  [Arnold Decl. Exh. B.]

### B.    The Grievances

The grievances at issue were filed between March and May, 2007.  [Declaration of Laurie

J. Quintel In Support Of Motions ("Quintel Decl.") ¶ 62, 66 & 70 & Exh. QQ, TT, &WW.]  The

---

[1] Simien, Andrade and Satuito are each within the unit of Hospital employees described in the order.

3

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1424228.4

Simien Grievance alleged that the Hospitals violated the CBA by giving Simien a warning and forcing him to change his shift.  [Quintel Decl. ¶ 66 & Exh. TT.]  The Satuito and Andrade Grievances alleged that the Hospitals' termination of those two employees violated the CBA. [Quintel Decl. ¶ 62 & 70 & Exh. QQ & WW.]  The Hospitals denied each grievance.  [Quintel Decl. ¶ 63, 67 & 71.]  Thereafter, representatives from the law firm of Weinberg, Roger & Rosenfeld (the "Weinberg Firm" or "Weinberg") contacted the Hospitals seeking to arbitrate the matters.  [Arnold Decl. ¶ 55 & Exh. UU.]  As will be fully explained below, the Hospitals, by this time, had concluded that Local 715 had effectively ceased to exist and/or that the Weinberg attorneys seeking to arbitrate the matter were actually acting on behalf of UHW.  On this basis, the Hospitals refused to arbitrate the matters.  [Arnold Decl. ¶ 56 & Exh. VV.]

> **C.    Beginning In Early 2006, The Hospitals Were Presented With Increasing Evidence That Local 715 Had Ceased To Exist And/Or Had Transferred Its Representative Duties To UHW**

Beginning in early 2006, Local 715 underwent changes that, as of at least March, 2007, effectively extinguished it as an ongoing operation.  These events were made known to the Hospitals in a piecemeal fashion, eventually causing the Hospitals to conclude that Local 715 had ceased to exist, and/or improperly had attempted to transfer its bargaining rights to UHW.

> **(1)    Local 715 Enters Into A "Servicing Agreement" With UHW**

Between February 18 and February 20, 2006, shortly after the CBA became effective, Sal Roselli, the President of UHW, and Kristy Sermersheim, the Executive Secretary of Local 715, executed a three (3) page document titled "Servicing Agreement" (the "Servicing Agreement"). [Arnold Decl. ¶ 36 & Exh. CC; Declaration of Scott P. Inciardi In  Support Of Motions ("Inciardi Decl.) Exh. EE.]  The Servicing Agreement provided that UHW would provide certain "professional services" to Local 715 at no cost, including "Representation in the grievance procedure and at arbitration hearings," "Representation at labor-management meetings," and "Assistance to members appearing before the National Labor Relations Board on behalf of the Local 715 Chapter at the Stanford Facility."  [Id.]  The Servicing Agreement further provided that, Local 715 and UHW would take such steps as were necessary to enforce the Servicing

4

SFCA_1424228.4

1  Agreement, including initiating proceedings before the NLRB, in the event that the Servicing

2  Agreement was rejected by the Hospitals." [Id.] By its terms, the Servicing Agreement was to

3  be effective as of March 1, 2006. [Id.]

### (2)    In March, 2006, UHW Assumes Local 715's Functions

5      On February 28, 2006, Greg Pullman, Local 715's Staff Director, informed Laurie

6  Quintel, the Hospitals' Director of Employee and Labor Relations, that she should work with an

7  employee of UHW named Ella Hereth in connection with the settlement of grievances and unfair

8  labor practice charges. [Quintel Decl. ¶ 9.] Around the same time, Ms. Hereth brought another

9  person named Rachel Deutsch to Ms. Quintel's office. Ms. Deutsch identified herself as a

10  representative of UHW and informed Ms. Quintel that UHW would be taking over representation

11  for the Hospitals. [Quintel Decl. ¶ 10.] When Ms. Quintel sought clarification, Mr. Pullman

12  assured Ms. Quintel that "Local 715 represents the workers covered by our agreement" but that

13  "Local 715 has asked SEIU UHW to service this unit in many ways on a day-to-day basis."

14  [Quintel Decl. ¶ 11-12 & Exh. B.] The Hospitals accepted this representation for the time being.

15  [Quintel Decl. ¶ 13.]

### (3)    Between March and May, 2006, UHW Employees Continue To Carry Out Local 715's Functions, And Evidence Surfaces That Local 715 Was Defunct

19      Between March and May, 2006, the functions that had formerly been carried out by Local

20  715 personnel were carried out exclusively by UHW employees. In particular, letters relating to

21  grievances and information were sent to the Hospitals by UHW employees on UHW stationery.

22  Some of these letters stated that the grievances in question were filed "on behalf of SEIU UHW"

23  or referred to Bargaining Unit employees as "members" of UHW. [Quintel Decl. ¶ 15 & Exh.

24  D.] During the same period, Ms. Hereth sent a letter to Ms. Quintel instructing her to "direct all

25  SEIU correspondence" to "Ella Hereth and Rachel Deutsch, SEIU United Healthcare Workers –

26  West." [Quintel Decl. ¶ 14 & Exh. C.] On May 22, 2006, Ms. Olick informed the Hospitals that

27  "I and Ella Hereth do not work for SEIU 715. SEIU-UHW is doing the representation work here

28  at Stanford Hospital." [Quintel Decl. ¶ 20 & Exh. H.] Mr. Pullman stated in an e-mail sent the

SFCA_1424228.4

1  same day, that "Jocelyn Olick, Rachel Deutch and Ella Hereth out of the SEIU UHW San

2  Francisco office are handling *all representation matters* for SEIU Local 715." [Quintel Decl. ¶

3  20 & Exh. H (emphasis supplied).] On May 26, 2006, Ms. Quintel received an e-mail from Ms.

4  Olick in which Ms. Olick purported to have authority to accept changes to the CBA. [Quintel

5  Decl. ¶ 21 & Exh. I.]

6      Between March and May, 2006, the Hospitals also received communications from the

7  Weinberg Firm, which had historically acted as Local 715's attorneys, suggesting that Local 715

8  was no longer acting as the bargaining representative. On or around March 28, 2006, W. Daniel

9  Boone of the Weinberg Firm wrote a letter to Laurence R. Arnold, an attorney with the law firm

10 of Foley & Lardner LLP, which represents the Hospitals, regarding a pending grievance. In the

11 subject line of his letter, Mr. Boone referred to "United Healthcare Workers – West (formerly

12 SEIU, Local 715)."[2] [Arnold Decl. ¶ 26 & Exh. S.]

13     In early April, 2006, Ms. Quintel received a telephone call from Phyllis Willett, who

14 identified herself as an employee of UHW and stated that when the Hospitals remitted union

15 dues, they needed to provide the social security numbers of the relevant employees to help UHW

16 identify them. [Quintel Decl. ¶ 16.] Around April 17, 2006, Ms. Quintel received a letter from

17 William A. Sokol of the Weinberg Firm in which he stated "I am writing on behalf of SEIU

18 United Healthcare Workers West" and requested that the Hospitals provide information

19 pertaining to Bargaining Unit employees, and the dues deducted from their paychecks. [Quintel

20 Decl. ¶ 17 & Exh. E.]

21          **(4)    The Hospitals Refuse To Deal With UHW Employees**

22     In May and June, 2006, due to the mounting evidence that, rather than providing limited

23 "professional services," UHW was actually assuming all of Local 715's former functions, the

24 Hospitals made clear that they did not consent to any transfer of bargaining rights from Local

25 715 to UHW, and that the Hospitals would not deal with employees of UHW. [Quintel Decl. ¶

26

27 _____

28 [2] When questioned about this reference, Mr. Boone wrote a letter stating that it was in error.
However, the subject line of that letter continued the use of the reference. [Arnold Decl. ¶ 25-28
& Exh. R-W.]

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1424228.4

19 & Exh. G; Arnold Decl. ¶ 32 & Exh. Z.]  In June, 2006, Hospitals also requested information from Local 715 regarding the organization's current status and the role of UHW, given the indications that Local 715 had abandoned, or was abandoning, its status as certified representative.  [Arnold Decl. ¶ 32 & Exh. Z.]

### (5)    SEIU Implements A Plan To Reorganize SEIU Locals

On June 9, 2006 the SEIU issued a document titled "Hearing Officers' Joint Report And Recommendations" (the "Joint Report").  [Inciardi Decl. Exh. T.]  The Joint Report outlined a plan to reorganize various SEIU Locals (the "SEIU Reorganization Plan").  The Joint Report noted, "Local 715 is the certified representative of employees at Stanford and Lucille (sic) Packard Hospitals" but that "UHW is actually servicing employees in these facilities . . . pursuant to servicing agreements."  [Inciardi Decl. Exh. T p. 16.]  The Joint Report concluded that, in order to maximize local union strength, the jurisdiction of various local unions should be changed.  With respect to government employee unions, the report recommended the creation of new local unions, that would absorb "a substantial portion" of the membership of existing local unions, including Local 715.  [Inciardi Decl. Exh. T at 40.]  The Joint Report also recommended that, "the affiliation of private healthcare units represented by Locals 727, 715, and 2028 should be changed to UHW as soon as feasible."  [Inciardi Decl. Exh. T p. 65.]

Two days later, on June 11, 2006, Andrew L. Stern, International President of the SEIU, issued a memorandum to "Affected SEIU Local Unions in California" announcing that the SEIU had decided to adopt the recommendations outlined in the Joint Report.  The memorandum confirmed that "Private Sector Hospital units currently represented by Locals 535, 707, 715, 2028, and 4988 will merge into UHW."  [Quintel Decl. ¶ 23 & Exh. K at p. 4.]

### (6)    The Hospitals Determine That The Servicing Agreement Is Not Legitimate.

On June 15, 2006, Mr. Arnold received a letter from Mr. Pullman regarding the Hospitals' request for information on Local 715 and its relationship with UHW.  Mr. Pullman assured Mr. Arnold that "The two employees we have asked SEIU-UHW to provide are under the direction of Local 715 and are there to represent Local 715 and its bargaining unit at Stanford

7

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1424228.4

1   Hospital.  That is all that is happening."  [Arnold Decl. ¶ 34 & Exh. AA.]  However, by this time,

2   through their own investigation, the Hospitals had learned of the Joint Report and the Stern

3   Memorandum and could not accept Mr. Pullman's assurances.  The Hospitals requested more

4   information, including a copy of the Servicing Agreement.  [Arnold Decl. ¶ 35 & Exh. BB.]

5       The Hospitals received the Servicing Agreement in mid August and reviewed it.  [Quintel

6   Decl. ¶ 24-25 & Exh. L; Arnold Decl. ¶ 36-38 & Exh. CC-EE.]  Upon review, it was apparent

7   that the document did not fully or accurately describe the relationship between Local 715 and

8   UHW.  While the Servicing Agreement called for UHW personnel to provide services under the

9   direction of Local 715, the actual conduct of the UHW employees who were performing such

10  services, along with the statements made by Mr. Pullman and others, reflected that Local 715 had

11  totally abdicated its representative duties and had assigned them to UHW in accordance with the

12  SEIU's reorganization plan.[3]  [Arnold Decl. Exh. EE.]  Accordingly, in a letter dated August 29,

13  2006 addressed to Ms. Sermersheim, Mr. Arnold stated that the Hospitals did not recognize the

14  Service Agreement, and would not deal with employees of UHW acting pursuant to it.  [Arnold

15  Decl. ¶ 38 & Exh. EE.]

16              **(7)     In Early 2007, Local 715 Prepares To Disband Itself And Its**

17                       **Representatives Confirm That It Has Ceased To Exist**

18      On January 2, 2007, International President Stern issued an "Order Of Reorganization" to

19  various SEIU locals, including Local 715.  [Inciardi Decl. Exh. U.]  President Stern ordered that

20  all workers represented by Local 715, with certain exceptions, be "reorganized into SEIU Local

21  521."  President Stern further ordered that "all . . . Stanford/Lucille (sic) Packard Hospital

22  workers be, ***and are hereby***, reorganized into SEIU Local UHW."  [Inciardi Decl. Exh. U

23  (emphasis supplied).]  Such "reorganization" was to take place as soon as practicable.

24      On January 31, 2007, Robert W. Rutledge, Chief Steward for the Bargaining Unit, sent

25  an e-mail to Senior Employee and Labor Relations Specialist Valerie Jeffries with a copy to Ms.

26

27  _____

28  [3] This included, contrary to the Servicing Agreement, the right to collect and receive dues, as Mr.
    Sokol's April 17, 2006 letter made clear.

Quintel.[4]  In the course of that e-mail, Mr. Rutledge wrote, "SEIU 715 no longer exists and a service agreement between the former 715 and UHW has been in place since March first of 2006."  [Quintel Decl. ¶ 28 & Exh. O.]  Although copies of this e-mail were also sent to Ms. Olick (a purported agent of Local 715 under the Service Agreement) and Kim Tavaglione, another employee of UHW, neither of them responded to contradict Mr. Rutledge's assertion that Local 715 had ceased to exist.[5]  [Quintel Decl. ¶ 28 & Exh. O.]  At a meeting with Ms. Quintel on or around February 2, 2007, Mr. Rutledge repeated his assertion that Local 715 no longer existed.  [Quintel Decl. ¶ 29.]  He also stated that Local 715 no longer represented employees at the Hospitals, and that they were now represented by UHW.  [Quintel Decl. ¶ 29.]

Local 715 maintained a website located at http://www.SEIU715.org (the "Local 715 Website").  Beginning in late January, 2007, Laurie Quintel began to monitor the Local 715 Website.  She discovered that the website now contained a prominent statement that "We are in the process of transitioning to our new local 521.  This web site will be taken down on Feb. 28. On March 1, our new Local's web site www.seiu521.org will have your chapter pages and other information."  [Quintel Decl. ¶ 30 & Exh. P.]

On March 1, 2007, Ms. Quintel discovered that when she attempted to access the Local 715 Website, she was now automatically redirected to the website of Local 521 at http://www.SEIU521.org (the "Local 521 Website").  [Quintel Decl. ¶ 32.]  In exploring the Local 521 Website, Ms. Quintel discovered a page containing a statement that five local unions, including Local 715 "have come together . . . by forming one larger, more powerful local." [Quintel Decl. ¶ 32 & Exh. R.]  Another page referenced benefits available to "former SEIU Local 715 members."  [Quintel Decl. ¶ 32 & Exh. R.]  On March 5, Ms. Quintel discovered the following statement on the Local 521 Website:  "Five locals (415, 535, 700, 715, and 817) have come together to cover the North Central region by forming one larger, more powerful local.  On

---

[4] Because, by this time, the Hospitals were refusing to deal with UHW employees, the shop stewards appointed by Local 715 prior to March 1, 2007 were the Hospitals main point of contact with the purported Local 715.  [Quintel Decl. ¶ 25.]

[5] Notably, no one associated with Local 715 was even copied on the e-mail.

SFCA_1424228.4

January 2, 2007, our new local received its charter.  On March 1, 2007, the resources of all five locals were transferred to Local 521." [Quintel Decl. ¶ 40 & Exh. X.]

When Ms. Quintel used the Local 521 Website's search feature to find the Hospitals, her search returned no results.  [Quintel Decl. Exh. X.]  However, when, on March 2, 2007, she performed a similar search on the UHW Website (http://SEIU-UHW.org), "Stanford University Medical Center" was listed as a facility represented by UHW.[6]  [Quintel Decl. ¶ 34 & Exh. S.]

At the same time that these statements were being posted on the SEIU Locals' websites, Local 715's purported representatives were responding to the Hospitals' inquiries regarding the status of Local 715 by baldly asserting that it continued to exist and had undergone no changes. [Quintel Decl. ¶ 39 & Exh. W.]

(8)    The Hospitals Cease Remitting Dues To Local 715 In Light Of The Evidence That It Has Ceased To Exist

It was now clear to the Hospitals that, at least as of March 1, 2007, Local 715 had ceased to exist.  Yet, under the CBA, the Hospitals were obligated to deduct union dues from Bargaining Unit employees' paychecks and remit them to Local 715.  The dues deduction authorization forms, by which the individual bargaining unit members authorized deduction and remittance of union dues, called for remittance of the dues specifically to Local 715, and to no other organization.  [Quintel Decl. ¶ 35 & Exh. T.]  The Hospitals determined that they could no longer remit dues to "Local 715" now that the organization apparently was no more and its former representatives refused to demonstrate otherwise.  [Quintel Decl. ¶ 36-37.]  Accordingly, on March 2, 2007, Ms. Quintel sent a letter to Ms. Sermersheim that, after the remittance of the dues for February, 2007, the Hospitals would no longer remit dues to "Local 715" absent clarification of its status and the identity of the organization that would be receiving the dues.[7]

---

[6] UHW has continued to assert on its website that it represents the Hospitals since that time, as screenshots from its website taken in March, 2008 reveal.  [Inciardi Decl. ¶ 24 & 29-30 & Exh. C21-C22.]

[7] In fact, evidence later came to light that Local 521 was the actual recipient of the dues being remitted to Local 715.  A document posted on the Local 521 Website titled "Dues Receipts of the year of 2007" showed that, in September, 2007, Local 521 received a payment of dues totaling $21,949 from an account designated "USW Hospitals" ("USW" being a commonly used

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

[Quintel Decl. ¶ 36 & Exh. U.]  The requested information was not provided, and after March 1, 2007, the Hospitals ceased remitting dues.  [Quintel Decl. ¶ 37.]  The Hospitals continued to deduct dues from Bargaining Unit employees' checks, but held the dues in a separate bank account established for that purpose, a procedure that continues to this date.  [Quintel Decl. ¶ 37.]

### (9)    In June, 2007, "Local 715" Is Purportedly Placed Under Trusteeship, And The Trustee Appoints New Counsel

On June 8, 2007, President Stern issued an "Order Of Emergency Trusteeship."  [Inciardi Decl. Exh. Z.]  That order stated that, because of the Hospitals' "position" that Local 715 had ceased to exist, and the transfer of the bulk of Local 715's former members and resources to Local 521, the SEIU was placing Local 715 under trusteeship, removing its officers, and appointing Bruce W. ("Rusty") Smith as trustee.  The order confirmed that the SEIU's reorganization plan remained in place and that the remaining members of Local 715 would be "united with other SEIU healthcare members in SEIU United Healthcare Workers – West." [Inciardi Decl. Exh. Z.]  Mr. Smith sent a letter to Ms. Quintel on June 14, 2007 informing her of the trusteeship, that the Servicing Agreement would "remain in full force and effect," and that UHW employees would continue to "service" the Hospitals.[8]  [Quintel Decl. ¶ 48 & Exh. FF.]

Around June 18, 2007, Mr. Arnold learned that Barbara J. Chisholm of the law firm Altshuler Berzon LLP (the "Altshuler Firm") was now representing "Local 715."  Mr. Arnold confirmed this in a conversation with Ms. Chisholm followed by a confirming letter.  [Arnold Decl. ¶ 40 & Exh. FF.]

---

acronym for "United Stanford Workers," the name given to the chapter of Local 715 that had been assigned to the SHC/LPCH Bargaining Unit).  [Arnold Decl. ¶ 57 & Exh. WW.]  This was the exact amount (rounded to the dollar) of the Hospitals' last dues remittance to "Local 715" for February, 2007, which was $21,949.35.  [Quintel Decl. ¶ 38 & Exh. V.]  Additionally, given UHW's requests for identifying information for Hospital employees in early 2006, it appeared that the ultimate recipient of the dues sent to "Local 715" could be UHW.

[8] The letter was sent to Ms. Quintel via facsimile transmission ("fax").  Notably, the information line automatically printed by the sending fax machine (the "fax stamp") indicated that the fax originated from "SEIU 521."  [Quintel Decl. ¶ 48 & Exh. FF.]

---

STANDFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

**(10)  Weinberg Attorneys Continue To Act On Behalf Of "Local 715", But Refuse To Clarify Their Representative Capacity**

To date, the Hospitals have not received any notification that the Altshuler Firm no longer represents "Local 715". [Quintel Decl. ¶ 57; Arnold Decl. ¶ 40.]  Nevertheless, the Hospitals continued to receive correspondence from Weinberg Firm attorneys purporting to act on "Local 715's" behalf in grievance and arbitration matters.  [Arnold Decl. ¶ 49 & 55 & 65 & Exh. UU & EEE.]  Weinberg Firm attorneys also appeared in each arbitration hearing that was held after the appointment of the Altshuler Firm as counsel.  [Arnold Decl. ¶ 46 & 49 & Exh. LL.]  The Hospitals were aware that the Weinberg Firm has historically acted as counsel to UHW and it had previously sent correspondence to the Hospitals representing UHW pursuant to the Servicing Agreement.  [Quintel Decl. ¶ 17 & Exh. E.]  The Hospitals became concerned that when the Weinberg Firm acted on behalf of "Local 715," it was actually retained by UHW and acting under authority of the rejected Servicing Agreement.  Accordingly, beginning on August 24, 2007, Mr. Arnold made repeated requests of both Ms. Chisholm and Mr. Smith to clarify whether the Weinberg Firm was representing Local 715 directly, or was acting pursuant to the Servicing Agreement.  [Arnold Decl. ¶ 49 & Exh. NN.]  These requests were met with silence or outright refusal to provide the information requested.  [Arnold Decl. ¶ 50-53 & Exh. OO-RR.]  The Hospitals could only conclude that the Weinberg Firm was, in fact, representing UHW, and that its appearances on "Local 715's" behalf were made under authority of the rejected Servicing Agreement.  Therefore, by a letter dated October 16, 2007, Mr. Arnold informed Ms. Chisholm that the Hospitals would no longer participate in any grievance or arbitration proceedings in which the Weinberg Firm appeared absent assurances that the appearance was made directly on behalf of Local 715 and not pursuant to the invalid Servicing Agreement.  [Arnold Decl. ¶ 53 & Exh. RR.]  To date, neither the Weinberg Firm nor the Altshuler Firm have provided the Hospitals with the requested assurance.

**(11)  The Hospitals Make Formal Information Requests Pursuant To The NLRA**

Under the NLRA, a party to a collective bargaining relationship is legally required to

12

SFCA_1424228.4

1   provide information requested by the other party, and relevant to the requesting party's duties

2   and obligations under the collective bargaining agreement.  The failure to do so constitutes a

3   refusal to bargain in violation of the Act.  *National Labor Relations Board v. Safeway Stores,*

4   *Inc.*, 622 F.2d 425, 429 (9th Cir. 1980)  Although the Hospitals no longer believed that Local

5   715 existed, Local 715's purported representatives continued to insist that it did exist.  Therefore,

6   in order to obtain the facts that would permit the Hospitals to test Local 715's claim of continued

7   existence, the Hospitals filed unfair labor practice charges against Local 715 asserting that its

8   refusal to provide requested information was unlawful.[9]  [Quintel Decl. ¶ 46 Exh. DD; Arnold

9   Decl. ¶ 54 & Exh. SS-TT.]  Region 32 of the NLRB issued a complaint on the ULP charges and

10  a hearing was held before an administrative law judge ("ALJ") on May 6, 2008.  [Arnold Decl. ¶

11  71-73 & Exh. LLL.]  To date, the ALJ has not issued a decision in the case.  [Arnold Decl. ¶ 73.]

12  **III.   DISCUSSION**

13       **A.    Legal Standards Applicable To Summary Judgment Motions**

14       Summary judgment is appropriate "if the pleadings, depositions, answers to

15  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

16  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

17  matter of law."  Fed.R.Civ.P. 56(c).  The moving party bears the initial responsibility of

18  informing the court of the basis for its motion and identifying those portions of "'the pleadings,

19

---

20  [9] In fact, Local 715's refusal (or inability) to produce any information that could substantiate its

21  claim that it continues to exist is an ongoing theme.  The Hospitals have propounded discovery
     on Local 715, as well as Local 521 and UHW (all of whom are represented by the Weinberg

22  Firm) seeking information on, among other things, Local 715's continued existence.  Local 715
     refused to produce anything but a paltry thirty-four (34) pages of documents.  Local 521 and

23  UHW refused to produce any documents.  The Hospitals, therefore, have been forced to file
     motions to compel with this Court to secure adequate responses, and have been forced to file this

24  Motion without the benefit of such responses.  [5:08-CV-00216 JF Dkt No. 33-35; 5:08-CV-
     01726 JF Dkt No. 16-18; 5:08-CV-01727 JF Dkt No. 16-18.]  In addition, the Hospitals have

25  also filed a motion to continue the hearing on the present motion and related deadlines due to the
     failure of the union entities to provide discovery responses.  [5:08-CV-00216, Dkt. #28-30; 5:08-

26  CV_01726, Dkt. # 11-13; and 5:08-CV-01727, Dkt. #11-13].  It is also significant, that Local
     715 itself filed a charge with the NLRB against the Hospitals alleging that the Hospitals

27  unlawfully refused to deal with its purported trustee.  Region 32 of the NLRB, however,
     dismissed the charge when Local 715 refused or failed to provide any evidence that it actually

28  existed, as requested by the NLRB.  [Arnold Decl. ¶ 73 & Exh. MMM.]

13

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1424228.4

1   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

2   any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

3   *Corporation v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56).  The non-moving

4   party is not entitled to rest on the mere allegations of its pleading, but must "go beyond the

5   pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and

6   admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id*.

7   at 324 (citation omitted).  Material facts "affect the outcome of the suit under the governing

8   law."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  There is no genuine basis of

9   material fact if, on the record taken as a whole, a rational trier of fact could not find in favor of a

10  party opposing summary judgment.  *See Matushita Electric Industrial Company v. Zenith Radio*

11  *Corporation*, 475 U.S. 574, 587 (1985).

12      **B.    The Hospitals Are Not Required To Arbitrate The Grievances Because Local**

13      **715 Has Effectively Ceased To Exist**

14          It is well-established that, where the NLRB certifies a union as the exclusive bargaining

15  representative of an employer's workers pursuant to the NLRA, the employer is not only

16  obligated to bargain with that union, but is prohibited from bargaining with any other union.

17  *Medo Photo Supply Corporation v. National Labor Relations Board*, 321 U.S. 678, 673-674

18  (1944); *Nevada Security Innovations, Ltd*., 341 NLRB 953, 955 (2004).  It follows that, where

19  the certified union has ceased to exist, the employer's bargaining obligation is at an end.  *Brooks*

20  *v. National Labor Relations Board*, 348 U.S. 96, 98 (1954); *Pioneer Inn Associates v. National*

21  *Labor Relations Board*, 578 F.2d 835, 839 (9th Cir. 1978).

22          Likewise, where an employer and the certified union negotiate a collective bargaining

23  agreement providing for arbitration of disputes, and the union subsequently ceases to exist, the

24  employer no longer has any obligation to arbitrate because only the union has standing to compel

25  arbitration.  *Moruzzi v. Dynamics Corporation Of America*, 443 F.Supp. 332, 336-337 (S.D.N.Y.

26  1977); *Lorber Industries Of California v. Los Angles Printworks Corporation*, 803 F.2d 523, 525

27  (9th Cir. 1986) (The obligation to arbitrate "may not be invoked by one who is not a party to the

28  agreement").  Where the certified union has ceased to exist, its former officials or representatives

14

SFCA_1424228.4

1   do not have standing to compel arbitration under its name.  Thus, in *Moruzzi, supra*, where the

2   union went out of existence, its former president "became neither the successor to nor the

3   assignee of the defunct [union] by adopting its name" and he therefore lacked standing to compel

4   arbitration in the former union's name.  *Moruzzi, supra*, 443 F.Supp. at 337.  Indeed, the Court

5   lacks jurisdiction over a suit by or against a union, where that union does not actually exist.

6   *International Brotherhood Of Boilermakers, Iron Ship Builders, Black-Smiths, Forgers And*

7   *Helpers, AFL-CIO v. Local Lodge D354*, 897 F.2d 1400, 1402-1403 (7th Cir. 1990) ("two

8   opposing parties are minimally required to create a case or controversy.").

9          In this case, demands for arbitration have been made by a party claiming to be Local

10  715.[10]  However, the undisputed evidence demonstrates that, on or around March 1, 2007,

11  pursuant to a explicit plan adopted by the SEIU International, Local 715 effectively ceased to

12  exist.  The "trustee" can become neither the successor to, nor the assignee of the no longer

13  existing Local 715, nor may it be resurrected once it ceased to exist as a viable labor

14  organization.  *Sisters Of Mercy Health Corporation*, 277 NLRB 1353, 1354 (1985); *Moruzzi,*

15  *supra*, 443 F.Supp. at 337.[11]  Therefore, the Hospitals have no obligation to arbitrate the

16  grievance in question.  Indeed, the Court lacks jurisdiction over this case.

17          **(1)      SEIU Adopted And Implemented A Plan That Expressly Called For**

18                      **The Dismemberment And Dissolution Of Local 715**

19          It cannot be disputed that SEIU developed and adopted a reorganization plan for

20  California SEIU locals.  It is further undisputed that the plan openly called for the bulk of Local

21  715 to be absorbed by Local 521, and for Local 715's duties at private hospitals, including those

22

---

23  [10] The Hospitals' position is that Local 715 ceased to exist after March 1, 2007, or thereabouts.

24  The Hospitals anticipate that Local 715 will contend (despite the evidence to the contrary) that it
    continues to exist.  References are, for this reason, made to "Local 715" relating to the time

25  period after March 1, 2007.  These references do not represent, and should not be construed as,
    an admission that Local 715 continued to exist after that date.

26  [11] In fact, as late as November, 26, 2007, a union shop steward and former executive board

27  member of Local 715 asserted on the record at a meeting of the Palo Alto City Council that the
    employees of the Hospitals are represented by "SEIU-UHW."  [Quintel Decl. ¶ 58 & Exh. NN p.

28  36-38.]

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

at the Hospitals, to be given over to UHW.  [Inciardi Decl. Exh. T p. 42-43; 61-62 & 65; Quintel

Decl. Exh. K p. 2-4]  In the meantime, the Joint Report noted that UHW was "actually servicing"

private hospital employees represented by Local 715 pursuant to servicing agreements.[12]

[Inciardi Decl. Exh. T p. 16.]

        Although neither the Joint Report nor the accompanying memorandum expressly state

that Local 715 would no longer exist after the contemplated reorganization, it is clear that this is

what was contemplated and was the *de facto* result, as no mention is made of any future role for

Local 715 after all of its former functions were merged into other locals.

        **(2)    The Bulk Of Local 715's Former Membership And Functions Were**

                **Merged Into Local 521**

        In January, 2007, International President Stern ordered that the SEIU reorganization plan

be implemented as soon as practicable.  [Inciardi Decl. Exh. U.]  It cannot be disputed that, after

President Stern's order, Local 715 publicly announced that it was "in the process of transitioning

to our new local 521" and that the Local 715 Website would be "taken down" on the last day of

February, 2007.  [Quintel Decl. ¶ 30 & Exh. P.]  It is further undisputed that, after March 1,

2007, Local 521 publicly announced that Local 715 and other locals "have come together" and

formed "one larger, more powerful local" and that, "On March 1, 2007, the resources of all five

locals were transferred to Local 521."[13]  [Quintel Decl. ¶ 40 & Exh. X.]

        **(3)    Local 715's Private Hospital Members And Functions Were**

                **Transferred To UHW**

        Apparently, due in large part to the Hospitals' resistance, the transfer of Local 715's

private hospital operations to UHW was conducted less openly than the merger into Local 521.

---

[12] The language used in the joint report is telling.  It did not state that UHW was "assisting" or "providing services" to Local 715.  Rather, it was "actually servicing" the Bargaining Unit. There was no qualification that it was doing so on behalf of Local 715.  This choice of language reflect the reality of the situation – pursuant to the International's wishes, Local 715 had stepped aside to allow UHW to become the bargaining representative in substance, if not in name.

[13] In an apparent effort to maintain the fiction of its continued existence, the Local 715 Website was subsequently re-established.  However, the website was virtually devoid of content.  [See Declaration Of Scott P. Inciardi, ¶ 2-23 & Exh. A-B.]

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

1   [Inciardi Decl. Exh. W p. 4.]  However, there is no doubt that the transfer did take place, and

2   Local 715 has ceased to exist.

3                    a)       **Under The Guise Of An Invalid Servicing Agreement, Local**

4                             **715 Assigned Its Representative Functions To UHW**

5           The process of merging Local 715's private hospital operations into UHW began with the

6   execution of servicing agreements through which UHW replaced Local 715 as the entity actually

7   carrying out representative duties.  [Inciardi Decl. Exh. T p. 16.]  In the case of the Hospitals, the

8   applicable servicing agreement was executed in February, 2006.  [Arnold Decl. Exh. CC.]

9   Thereafter, although Local 715 nominally retained its status as the bargaining representative,

10  UHW aggregated to itself all significant representational duties (or at least attempted to do so).

11  Thus, admitted employees of UHW were assigned to deal with the Hospitals regarding matters of

12  contract negotiation and employee grievances, and the Hospitals were instructed to send all

13  correspondence directly to UHW employees at UHW's San Francisco office.  [Quintel Decl. ¶ 1-

14  13 & Exh. B-C.]  UHW employees submitted grievances on behalf of Bargaining Unit

15  employees on UHW letterhead, and referred to those employees as members of UHW.  [Quintel

16  Decl. ¶ 15 Exh. D.]  Greg Pullman confirmed in an e-mail that UHW employees "handling ***all***

17  ***representation matters*** for SEIU Local 715."  [Quintel Decl. ¶ 18 & Exh. F (emphasis

18  supplied).]  At the same time, UHW employee Jocelyn Olick confirmed in an e-mail that she and

19  the other UHW employees assigned to "service" the Bargaining Unit did not work for Local

20  715.[14]  [Quintel Decl. ¶ 20 & Exh. H.]

21  ///

22  ///

23

24  [14] At the same time that SEIU was carrying out a *de facto* transfer of Local 715's members and
    functions to UHW, Local 715's representatives attempted to conceal the true nature of what was
25  transpiring.  On June 14, 2006, shortly after the formal adoption of the SEIU reorganization plan
    calling for the transfer of Local 715's private hospital operations to UHW and the dissolution of
26  Local 715, Greg Pullman wrote a letter to Mr. Arnold claiming that Local 715 had asked two (2)
    UHW employees "to help enforce the collective bargaining agreement" and that "[t]hat is all that
27  is happening."  [Arnold Decl. ¶ 34 & Exh. AA.]  When correspondence on UHW letterhead or
    claiming to be on behalf of UHW members was rejected, it was simply re-submitted on Local
28  715 letterhead  [Quintel Decl. ¶ 60 & Exh. OO.]

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1424228.4

**b)**    **UHW Began Receiving Dues Deducted From Bargaining Unit**

**Members Paychecks**

That UHW had stepped into the shoes of Local 715 is also demonstrated by the fact that, in early April, 2006 UHW began receiving from Local 715 the dues deducted from Bargaining Unit employees' paychecks and sent to Local 715 by the Hospitals.  This is demonstrated by the undisputed fact that persons admittedly acting on behalf of UHW demanded information from the Hospitals for the express purpose of processing the dues deducted from Bargaining Unit employees' paychecks (although the Servicing Agreement called for UHW to provide "services" free of charge).  [Quintel Decl. ¶ 16-17 & Exh. E.]

**c)**    **Bargaining Unit Employees Were Asked To Agree To Change**

**Their Union Affiliation To UHW**

In September, 2006, Bargaining Unit employees were asked to ratify the reorganization plan adopted by SEIU by means of a state-wide vote.  The balloting material distributed to Bargaining Unit employees expressly stated that "Hospital workers at . . . Stanford/Lucille Packard Children's Hospital . . . will change their affiliation to United Healthcare Workers – West."  [Quintel Decl. ¶ 26-27 & Exh. M-N.]

**d)**    **President Stern Ordered The "Reorganization" Of Local 715**

**Into UHW, And Chief Shop Steward Robert Rutledge**

**Admitted That Local 715 Had Ceased To Exist**

On January 2, 2007, International President Stern issued the order that the employees formerly represented by Local 715 were to be "reorganized" (a euphemism for merged) into other locals, and specifically directed that the Hospital employees formerly represented by Local 715 were to be "reorganized" into UHW as soon as practicable.  [Inciardi Decl. Exh. U.]

On January 31, 2007, Local 715's Chief Shop Steward, Robert Rutledge stated in an e-mail that "SEIU 715 no longer exists and a service agreement between the former 715 and UHW has been in place since March first of 2006."[15]  [Quintel Decl ¶ 28-29 & Exh. O.]  Mr. Rutledge

---

[15] By linking the defunct status of Local 715 with the Servicing Agreement, Mr. Rutledge thus confirmed what was apparent – that the execution of the Servicing Agreement was an integral

confirmed this statement in a meeting with Ms. Quintel two (2) days later in which he stated that Local 715 no longer represented the Bargaining Unit, that it had ceased to exist, and that UHW now represented the Bargaining Unit.  [Quintel Decl ¶ 29.]

e)    **"Local 715" Is Represented By UHW's Legal Counsel**

Historically, Local 715 was represented by the Weinberg Firm, which has also long represented UHW.  [Arnold Decl. ¶ 9-10.]  In June, 2007, SEIU purported to place Local 715 under trusteeship, and the trustee, Bruce "Rusty" Smith, designated new counsel for Local 715 – the Altshuler Firm.  [Arnold Decl. ¶ 40 & Exh. FF.]  Nevertheless, after the appointment of the Altshuler Firm as Local 715's counsel the Weinberg Firm continued to request to bargain, appear in grievance and arbitration proceedings, and issue correspondence purportedly on behalf of "Local 715".  [Arnold Decl. ¶ 47; 49; 55; & 65 & Exh. UU & EEE; Quintel Decl. ¶ 54-55 & Exh. K-L.]  Despite repeated requests by the Hospitals, neither the Weinberg Firm, nor the Altshuler Firm, nor Mr. Smith himself, were willing to make a simple representation that the Weinberg Firm was representing Local 715 directly.  [Arnold Decl. ¶ 49-53 & Exh. NN-RR.]  Their refusal – even when under legal compulsion – to make this simple representation can only lead to the conclusion that the Weinberg Firm is not representing Local 715 directly.  Instead, it is retained by and represents UHW and is providing legal services pursuant to the invalid Servicing Agreement.  Its position, therefore, is no different than UHW itself, which has attempted to assume the representative duties formerly held by the now defunct Local 715 under the guise of the rejected Servicing Agreement.

f)    **UHW Holds Itself Out As The Representative Of The Bargaining Unit**

Notwithstanding the disingenuous claims that Local 715 continues to exist and represent the Bargaining Unit, UHW publicly asserts that it, not Local 715, represents the Bargaining Unit. The UHW Website lists "Stanford University Medical Center" among the facilities that it claims to represent and lists Myriam Escamilla as the "UHW Representative" assigned to the facility.

---

part of the plan to disband Local 715 and was designed to further that purpose.

19

SFCA_1424228.4

[Inciardi Decl. ¶ 29-30 & Exh. C20-C22.]  The UHW Website also contains a document listing those collective bargaining agreements scheduled to expire in 2008 for the units represented by UHW.  "Stanford Univ. Med. Ctr./ Lucille Packard" is among the contracts listed.  [Inciardi Decl. ¶ 27 & Exh. D p. 3.]

> **(4)**      **As Local 715 Has Effectively Ceased To Exist, The Hospitals Have No Obligation To Arbitrate The Simien, Satuito or Andrade Grievances**

As the above evidence demonstrates, SEIU's plan to dissolve Local 715 was carried out and, as of March 1, 2007, Local 715 was no more.  Given this, two conclusions necessarily follow.  First, the Hospitals are not obligated to arbitrate the Simien, Satuito, and Andrade Grievances because the only party with standing to compel arbitration no longer exists.  Second, this Court lacks jurisdiction over this case because the party purportedly maintaining the action has been shown to be fictitious.  Therefore, the Court should dismiss each of the cases.

> **(5)**      **The Maintenance Of Local 715 As A Sham Organization Does Not Change The Result**

Various individuals have attempted to maintain the fiction that Local 715 continues to exist, chiefly by baldly representing that it continues to exist, issuing correspondence in its name, and appointing a "trustee" for it.  However, these efforts are a transparent attempt to hide the reality of what has occurred.  It should be no difficult task for an ongoing organization to demonstrate something as basic as its simple existence.  Yet, at every stage where "Local 715" has been called upon to establish that it exists, it has declined or openly refused to do so.  [Arnold Decl. ¶ 32; 34; 40-42; 49-53; 64-65 & Exh. Z-AA; FF-GG; NN-RR; DDD-EEE.]  "Local 715" in fact refused to provide any information whatsoever in response to the Hospitals' information requests, although it is required to do so under the NLRA.[16]  [Arnold Decl. ¶ 71 & Exh. LLL.]  Similarly, "Local 715" refused to appropriately respond to discovery requests in the pending actions.  Weinberg Firm attorneys also have refused to state that they are not actually

---

[16] In fact, Region 32 of the NLRB has come to the conclusion that Local 715's refusal to produce requested information on its status and legal representation was unlawful and issued a complaint on that basis.  [Arnold Decl. ¶ 71 & Exh. LLL.]

STANFORD AND LPCH'S MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1424228.4

1    retained by UHW.  Indeed, when "Local 715" filed a charge with the NLRB alleging that the

2    Hospitals unlawfully refused to deal with its "Trustee," Region 32 dismissed the charge after

3    "Local 715" failed to provide any evidence that it actually existed.  [Arnold Decl. ¶ 73 & Exh.

4    MMM.]

5        Thus, it is clear that "Local 715" exists, if at all, only on paper, and is, in fact, a sham

6    designed to hide the fact that the former organization has been dissolved.  Where a labor

7    organization has actually ceased to exist, courts will reject attempts to compel arbitration by

8    persons claiming to be that organization.  *Moruzzi, supra*, 443 F.Supp. at 336-337.  Simply

9    asserting the organization's existence is insufficient.

10   **C.    Whether Or Not Local 715 Continues To Exist, The Hospitals Are Not**

11   **Required To Participate In Grievance And/Or Arbitration Proceedings With**

12   **Representatives Of UHW**

13       Even assuming for the sake of argument only that Local 715 continues to exist (which the

14   Hospitals by no means concede), the Hospitals are still not obligated to arbitrate the Simien,

15   Satuito and Andrade Grievances because the actual party seeking to arbitrate with the Hospitals

16   is not Local 715, but UHW, and UHW has no standing to compel the Hospitals to arbitrate.

17       Local 715 and the Weinberg attorneys (who have attempted to appear on Local 715's

18   behalf with respect to these grievances and other grievances filed since March, 2007) have been

19   unwilling to state that such appearances were, or would be, made on behalf of Local 715 directly,

20   although it would be in their interest to do so were that the case.[17]  [Arnold Decl. ¶ 64-66 & Exh.

21   DDD-FFF.]  This behavior is tantamount to an admission that such appearances were not, and

22   would not be, directly on behalf of Local 715.  Instead, the evidence reflects that the Weinberg

23   attorneys who are seeking to arbitrate with the Hospitals are retained by UHW and are appearing

24

25   [17] In a letter dated December 14, 2007, Mr. Smith stated that he authorized the Weinberg Firm to
     "represent the Union all (sic) aspects of the arbitration process."  [Quintel Decl. ¶ 56 & Exh.
26   MM.]  This letter, like the representations made by the Weinberg Firm itself on this issue, was
     carefully crafted in such a way as to fail to address the essential question – was the Weinberg
27   Firm's representation direct or pursuant to the Servicing Agreement, which Mr. Smith asserted
     remained in full force and effect.  Mr. Smith's representation was completely consistent with
28   continued representation through the invalid Servicing Agreement.

---

21

SFCA_1424228.4

1    for Local 715 pursuant to the invalid Servicing Agreement, which the "trustee" has attempted to

2    resurrect.

3    Local 715 may argue that UHW attorneys are entitled to represent Local 715 pursuant to

4    the rejected Servicing Agreement.  However, while it is established that a union may assign

5    agents to appear on its behalf, what is actually transpiring is an invalid attempt to transfer Local

6    715's bargaining duties wholesale to UHW.  The Hospitals are not obliged to acquiesce in this

7    attempt, and are actually prohibited from doing so.

8    The Servicing Agreement authorizes UHW to provide "services" to Local 715 consisting

9    of representation in grievance and arbitration proceedings, representation in labor management

10   meetings, and assistance to members appearing before the NLRB.[18]  [Arnold Decl. Exh. CC.]

11   Yet, as discussed above, after the Servicing Agreement went into effect, UHW simply replaced

12   Local 715 with respect to all aspects of the bargaining relationship.  Additionally, as discussed

13   previously, the plan adopted by the SEIU expressly called for Local 715's representative duties

14   to be transferred to UHW.

15   It has been recognized that, under the National Labor Relations Act, one union may use

16   agents or experts from another union to act on its behalf in formal labor negotiations.  *Goad*

17   *Company*, 333 NLRB 677, 679 (2001).  However, a union may not use the purported

18   appointment of agents to effectuate a *de facto* change of the bargaining representative, and under

19   such circumstances, the employer is under no obligation to deal with the purported agents.

20   *Goad, supra*, 333 NLRB at 680 (employer not obligated to deal with purported agent where

21   certified union "did not simply enlist the aid of an agent . . . it transferred its representational

22   duties and responsibilities.")  See also *Sherwood Ford, Inc*, 188 NLRB 131, 133-134 (1971)

23   (Board disregarded agency agreement between unions as "a device, subterfuge, or stratagem"

24   designed to accomplish a *de facto* change of the bargaining agent.).

25

26   _____

[18]  The Servicing Agreement also calls upon Local 715 resume representing the Bargaining Unit

27   in the event that the Hospitals reject the Servicing Agreement, which Local 715 has not done.  It
     also calls for Local 715 and UHW to take steps to enforce the Servicing Agreement in the event

28   of its rejection by the Hospitals, which they have not done.  [Arnold Decl. Exh. CC.]

SFCA_1424228.4

1    The same conclusion applies here.  Local 715 and UHW have used the Servicing

2    Agreement as a "device, subterfuge, or stratagem" to, in effect, transfer representative

3    status to UHW.  Rather than serving as a mere agent, as called for in the Servicing

4    Agreement, UHW has sought to completely supplant Local 715 with respect to every

5    aspect of collective bargaining, leaving Local 715 as the representative in name only.

6    Given this, the Hospitals are not obligated to (and, in fact, must not) deal with employees

7    and representatives of UHW, including Weinberg Firm attorneys, acting pursuant to the

8    invalid Servicing Agreement.

9    **D.    If The Court Decides That These Cases Present A Representational Issue On**

10   **Which It Should Not Rule, It Should Issue A Stay**

11   Although this Court is vested with authority to hear suits for breach of a collective

12   bargaining agreement under Section 301, the NLRB has primary jurisdiction over questions of

13   representation under the NLRA.  *Local No 3-193 International Wood-Workers Of America v.*

14   *Ketchikan Pulp Company*, 611 F.2d 1295, 1301 (9th Cir. 1980).  This case does not fall within

15   the Board's primary jurisdiction because the Court is not asked to determine the representative

16   status of Local 715.  Rather, the Court is asked to decide that the Hospitals did not breach the

17   CBA because Local 715 no longer exists, or because the demand for arbitration is being made by

18   UHW.  It is established that a federal court may decide contractual issues under Section 301,

19   even if such issues closely parallel representational issues.  *Hotel Employees, Restaurant*

20   *Employees Union, Local 2 v. Marriott Corporation*, 961 F.2d 1464, 1468 (9th Cir. 1992);

21   *Moruzzi, supra*, 443 F.Supp. at 337 (holding that because the union had ceased to exist, those

22   acting in its name had no standing to compel arbitration).[19]

23   Nevertheless, the Hospitals recognize that these issues are closely related to the issue of

24   the representative status of Local 715 because, if Local 715 has ceased to exist, then it has

25

26   _____

     [19]  Indeed, because Section 301 requires that the suit in question be by or against a "labor

27   organization," the Court is necessarily to make a finding on the status of the purported labor
     organization, including whether the purported labor organization actually exists.  29 U.S.C. §

28   185.

23

SFCA_1424228.4

1  necessarily lost its representative status.  In the event that the Court determines that it should not

2  make a determination regarding the status of Local 715 because it involves a representational

3  question within the primary jurisdiction of the NLRB, the Court should issue an order staying

4  any arbitration proceedings pending resolution of such issue before the NLRB.  Such resolution

5  must be on a charge filed by Local 715 alleging a refusal to recognize or bargain by the

6  Hospitals, as there is no charge that the Hospitals may initiate on this issue.  Local 715, however,

7  has steadfastly refused to file such a charge.

8  **IV.    CONCLUSION**

9      For the foregoing reasons, the Hospitals respectfully submit that the Court should find

10  that, because Local 715 no longer exists, the Hospitals are not required to arbitrate the Simien,

11  Satuito, and Andrade Grievances, or, in the alternative, that they are not required to arbitrate with

12  any person not directly employed or retained by Local 715.  In such circumstances, the Court

13  should grant summary judgment and/or adjudication in the Hospitals favor and dismiss the

14  Simien, Satuito and Andrade actions.  Finally, in the event that the Court decides that it cannot

15  resolve the above issues because there exists a representation issue that must be decided by the

16  NLRB, the Hospitals request that the Court issue an order staying the Simien, Satuito and

17  Andrade actions until the Board resolves such issue.

18

19  Dated:  July 18, 2008                FOLEY & LARDNER LLP
                                         LAURENCE R. ARNOLD
20                                       EILEEN R. RIDLEY
                                         SCOTT P. INCIARDI
21

22

23  By: /s/ _____
                                         EILEEN R. RIDLEY
24                                       Attorneys for Respondents STANFORD
                                         HOSPITAL & CLINICS and LUCILE
25                                       PACKARD CHILDREN'S HOSPITAL

26

27

28

SFCA_1424228.4

1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715 | Case No:  5:08-CV-00216-JF |
| 12 | [PROPOSED] ORDER GRANTING STANFORD HOSPITAL AND |
| 13        Petitioner, | CLINICS' AND LUCILE PACKARD CHILDREN'S HOSPITAL'S MOTION |
| 14     vs. | FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY |
| 15  STANFORD HOSPITAL & CLINICS and LUCILE PACKARD CHILDREN'S | ADJUDICATION OF CLAIMS OR DEFENSES |
| 16  HOSPITAL | |
| 17        Respondents. | [FED. RULE OF CIV. P. 56] |
| 18 | Date:         August 29, 2008<br>Time:         9:00 A.M. |
| 19 | Dept:         Ctrm. 3, 5th Floor |
| 20 | Judge:        Hon. Jeremy Fogel |
| 21  SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715 | Case No:  5:08-CV-01726-JF |
| 22 | |
| 23        Petitioner, | |
| 24     vs. | |
| 25  STANFORD HOSPITAL & CLINICS and LUCILE PACKARD CHILDREN'S | |
| 26  HOSPITAL | Judge:        Hon. Jeremy Fogel |
| 27        Respondents. | |

28

SFCA_1425613.2

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715 | Case No:  5:08-CV-01727-JF |
| Petitioner, | |
| vs. | |
| STANFORD HOSPITAL & CLINICS and LUCILE PACKARD CHILDREN'S HOSPITAL | |
| Respondents. | Judge:        Hon. Jeremy Fogel |

1
2
3
4
5
6
7
8
9
10
11

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SFCA_1425613.2

1    The motion of Respondents Stanford Hospital And Clinics and Lucile Packard Children's

2  Hospital (the "Hospitals") for summary judgment or, in the alternative adjudication of claims or

3  defenses in Case Nos. 5:08-CV-00216 JF (Simien Grievance), 5:08-CV-01726 JF (Satuito

4  Grievance), and 5:08-CV-01727 JF (Andrade Grievance) (collectively, the "Cases") came on

5  regularly for hearing on August 29, 2008, with Eileen R. Ridley of Foley & Lardner, LLP

6  appearing as counsel for the Hospitals and Bruce Harland of Weinberg Roger & Rosenfeld

7  appearing for Petitioner, Service Employees International Union, Local 715 ("Local 715").

8  After full consideration of the papers in support and in opposition of said motion, the evidence

9  submitted by the parties, the oral argument of counsel and the papers and records in the Cases,

10  and good cause appearing, the Court HEREBY FINDS that there is no triable issue of any

11  material fact and that the Hospitals are entitled to judgment as a matter of law under Rule 56 of

12  the Federal Rules Of Civil Procedure for the reasons stated below.

13  **I.    LOCAL 715 HAS CEASED TO EXIST**

14    The Hospitals are not required to arbitrate the grievances at issue in the Cases because

15  Local 715 has ceased to exist.

16    The Court finds that the following facts are material and undisputed:

17  •    In 1998, the National Labor Relations Board ("NLRB" or the "Board") issued an order

18       (the "Certification") certifying Local 715 as the exclusive collective bargaining

19       representative of a unit of Hospital employees (the "Bargaining Unit") as set forth in the

20       Certification.  [Declaration of Laurence R. Arnold In Support of Motions ("Arnold Decl.)

21       Exh. A.]

22
23  •    Thereafter, the Hospitals and Local 715 engaged in collective bargaining resulting in a

24       series of collective bargaining agreements.  The current collective bargaining agreement

         (the "CBA") became effective on January 20, 2006, and is scheduled to expire on

25       November 4, 2008.  [Arnold Decl. Exh. B.]

26
27  •    Article 1 of The CBA contains a "Recognition Clause" which states that, pursuant to the

28
                                          1

SFCA_1425613.2

Board's Certification, the Hospitals recognized Local 715 "as the sole and exclusive representative for the purpose of collective bargaining" with respect to Bargaining Unit employees.  [Arnold Decl. Exh. B.]

- Article 26 of the CBA contains a grievance and arbitration procedure through which alleged violations of the CBA may be challenged.  However, only Local 715 may appeal a grievance to arbitration.  [Arnold Decl. Exh. B.]

- Between February 18 and February 20, 2006, Local 715 entered into a "Servicing Agreement" with Service Employees International Union, United Healthcare Workers – West ("UHW").  [Arnold Decl. ¶ 36 & Exh. CC; Declaration of Scott P. Inciardi In Support of Motions ("Inciardi Decl.") Exh. EE.]

- The Servicing Agreement provided that UHW would provide certain "professional services" to Local 715 at no cost, including "Representation in the grievance procedure and at arbitration hearings," "Representation at labor-management meetings," and "Assistance to members appearing before the National Labor Relations Board on behalf of the Local 715 Chapter at the Stanford Facility."  [Arnold Decl. Exh. CC.]

- The Servicing Agreement further provided that, Local 715 and UHW would take such steps as were necessary to enforce the agreement, including initiating proceedings before the NLRB, in the event that the Servicing Agreement was rejected by the Hospitals." [Arnold Decl. Exh. CC.]

- The  Servicing Agreement was to be effective as of March 1, 2006.  [Arnold Decl. Exh. CC.]

- On February 28, 2006, Greg Pullman, then Local 715's Staff Director, informed Laurie Quintel, the Hospitals' Director of Employee and Labor Relations, that she should work with an employee of UHW named Ella Hereth in connection with the settlement of

SFCA_1425613.2

grievances and unfair labor practice charges.  [Declaration of Laurie J. Quintel In Support Of Motions ("Quintel Decl.") ¶ 9.]

- Around the same time, another UHW employee named Rachel Deutsch told Ms. Quintel that UHW would be taking over representation for the Hospitals.  [Quintel Decl. ¶ 10.]

- Ms. Quintel sought clarification from Mr. Pullman, whereupon Mr. Pullman told Ms. Quintel that "Local 715 represents the workers covered by our agreement" but that "Local 715 has asked SEIU UHW to service this unit in many ways on a day-to-day basis."  [Quintel Decl. ¶ 11-12 & Exh. B.]

- Between March and May, 2006, the functions that had formerly been carried out by Local 715 personnel were carried out exclusively by UHW employees.  UHW employees filed grievances on UHW stationery, some of which referred to Bargaining Unit members as "members" of UHW.  [Quintel Decl. ¶ 15 & Exh. D.]  Ms. Hereth sent a letter to Ms. Quintel instructing to "direct all SEIU correspondence" to UHW employees at UHW's San Francisco office.  [Quintel Decl. ¶ 14 & Exh. C.]  On May 22, 2006, Jocelyn Olick, a UHW employee and purported servicing agent under the Servicing Agreement, stated in an e-mail that "I and Ella Hereth do not work for SEIU 715.  SEIU-UHW is doing the representation work here at Stanford Hospital."  [Quintel Decl. ¶ 20 & Exh. H.]  On the same day, Mr. Pullman stated in an e-mail that "Jocelyn Olick, Rachel Deutch and Ella Hereth out of the SEIU UHW San Francisco office are handling all representation matters for SEIU Local 715."  [Quintel Decl. ¶ 20 & Exh. H.]  Ms. Olick also purported to have authority to accept changes to the CBA.  [Quintel Decl. ¶ 21 & Exh. I.]

- On or around March 28, 2006, W. Daniel Boone of the law firm Weinberg Roger & Rosenfeld, which historically represented Local 715, wrote a letter to Laurence R. Arnold, an attorney who represents the Hospitals, which referred to "United Healthcare Workers – West (formerly SEIU, Local 715)."  [Arnold Decl. ¶ 26 & Exh. S.]

SFCA_1425613.2

- In early April, 2006, UHW employee Phyllis Willett told Ms. Quintel that when the Hospitals remitted union dues, they needed to provide the social security numbers of the relevant employees to help UHW identify them. [Quintel Decl. ¶ 16.]

- Around April 17, 2006, Ms. Quintel received a letter from William A. Sokol of the Weinberg Firm in which he stated "I am writing on behalf of SEIU United Healthcare Workers West" and requested that the Hospitals provide information pertaining to Bargaining Unit employees, and the dues deducted from their paychecks. [Quintel Decl. ¶ 17 & Exh. E.]

- In May and June, 2006, Hospitals informed Local 715 that they did not consent to any transfer of bargaining rights from Local 715 to UHW, and that the Hospitals would not deal with employees of UHW. [Quintel Decl. ¶ 19 & Exh. G; Arnold Decl. ¶ 32 & Exh. Z.]

- In June, 2006, Hospitals requested information from Local 715 regarding the organization's status and the role of UHW. [Arnold Decl. ¶ 32 & Exh. Z.]

- On June 9, 2006 the Service Employees International Union ("SEIU" or the "International") issued a document titled "Hearing Officers' Joint Report And Recommendations" (the "Joint Report"). The Joint Report outlined a plan to reorganize various SEIU Locals (the "SEIU Reorganization Plan"). The Joint Report noted, "Local 715 is the certified representative of employees at Stanford and Lucille (sic) Packard Hospitals" but that "UHW is actually servicing employees in these facilities . . . pursuant to servicing agreements." [Inciardi Decl. Exh. T p. 16.] The Joint Report concluded that, in order to maximize local union strength, the jurisdiction of various local unions should be changed. With respect to government employee unions, the report recommended the creation of new local unions, that would absorb "a substantial portion" of the membership of existing local unions, including Local 715. [Inciardi Decl. Exh. T p. 40.] The Joint

4
[PROPOSED] ORDER GRANTING STANFORD AND LPCH'S
MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1425613.2

1      Report also recommended that, "the affiliation of private healthcare units represented by

2      Locals 727, 715, and 2028 should be changed to UHW as soon as feasible."  [Inciardi

3      Decl. Exh. T p. 65.]

4
       •      On June 11, 2006, Andrew L. Stern, International President of SEIU, issued a
5
              memorandum to "Affected SEIU Local Unions in California" announcing that SEIU had
6
              decided to adopt the recommendations outlined in the Joint Report.  The memorandum
7
              confirmed that "Private Sector Hospital units currently represented by Locals 535, 707,
8
              715, 2028, and 4988 will merge into UHW."  [Quintel Decl. ¶ 23 & Exh. K at p. 4.]
9

10     •      Hospitals received copies of the Servicing Agreement in mid August and reviewed it.

11            [Quintel Decl. ¶ 24-25 & Exh. L; Arnold Decl. ¶ 36-38 & Exh. CC-EE.]  The Hospitals

12            concluded, based upon the evidence that Local 715 had abdicated its representative duties

13            and assigned them to UHW, that the Servicing Agreement was invalid and rejected it.

14
       •      Local 715 was informed of the Hospitals' rejection of the Servicing Agreement on or
15
              around August 29, 2006, and was further informed that the Hospitals would not deal with
16
              employees of UHW acting pursuant to the Servicing Agreement.  [Arnold Decl. ¶ 38 &
17
              Exh. EE.]
18

19     •      In September, 2006, Bargaining Unit employees were asked to ratify the reorganization

20            plan adopted by SEIU by means of a state-wide vote.  The balloting material distributed

21            to Bargaining Unit employees expressly stated that "Hospital workers at . . .

22            Stanford/Lucille Packard Children's Hospital . . . will change their affiliation to United

23            Healthcare Workers – West."  [Quintel Decl. ¶ 26-27 & Exh. M-N.]

24
       •      On January 2, 2007, International President Stern issued an "Order Of Reorganization" to
25
              various SEIU locals, including Local 715.  [Inciardi Decl. Exh. U.]  President Stern
26
              ordered that all workers represented by Local 715, with certain exceptions, be
27
              "reorganized into SEIU Local 521."  President Stern further ordered that "all . . .
28

                                               5
                   [PROPOSED] ORDER GRANTING STANFORD AND LPCH'S
                   MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
             CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

Stanford/Lucille (sic) Packard Hospital workers be, and are hereby, reorganized into SEIU Local UHW."  [Inciardi Decl. Exh. U.]  Such "reorganization" was to take place as soon as practicable.

- On January 31, 2007, Chief Shop Steward Robert W. Rutledge, stated in an e-mail that, "SEIU 715 no longer exists and a service agreement between the former 715 and UHW has been in place since March first of 2006."  [Quintel Decl. ¶ 28 & Exh. O.]  Copies of the e-mail were sent to Ms. Olick and UHW employee Kim Tavaglione, neither of whom objected to Mr. Rutledge's statement.

- At a meeting with Ms. Quintel on or around February 2, 2007, Mr. Rutledge repeated his assertion that Local 715 no longer existed.  He also stated that Local 715 no longer represented employees at the Hospitals, and that they were now represented by UHW. [Quintel Decl. ¶ 29.]

- In late January, Local 715 prominently posted a statement on its website, located at http://www.SEIU715.org, that "We are in the process of transitioning to our new local 521.  This web site will be taken down on Feb. 28.  On March 1, our new Local's web site www.seiu521.org will have your chapter pages and other information."  [Quintel Decl. ¶ 30 & Exh. P.]

- Beginning on or around March 1, visitors to Local 715's website could no longer access the former site, but were automatically redirected to the website of Service Employees International Union, Local 521 ("Local 521"), located at http://www.SEIU521.org.  Local 521's website contained a prominent statement that  five local unions, including Local 715 "have come together . . . by forming one larger, more powerful local."  [Quintel Decl. ¶ 32 & Exh. R.]  Another page referenced benefits available to "former SEIU Local 715 members."  [Quintel Decl. ¶ 32 & Exh. R.]

- On or around March 5, 2007, Local 715's website contained the following statement:

6

SFCA_1425613.2

"Five locals (415, 535, 700, 715, and 817) have come together to cover the North Central region by forming one larger, more powerful local.  On January 2, 2007, our new local received its charter.  On March 1, 2007, the resources of all five locals were transferred to Local 521."  [Quintel Decl. ¶ 40 & Exh. X.]

• As of March 2, 2007, UHW's website, located at http://SEIU-UHW.org, contained an assertion that UHW represented the Hospitals' employees.  [Quintel Decl. ¶ 34 & Exh. S.]  UHW has continued to claim to represent the Hospitals' employees on its website. [Inciardi Decl. ¶ 24 & 29-30 & Exh. C21-C22.]

• The dues deduction authorization forms, by which the individual bargaining unit members authorized deduction and remittance of union dues, authorized remittance of dues specifically to Local 715, and to no other organization.  [Quintel Decl. ¶ 35 & Exh. T.]

• In fact, although it was not known to the Hospitals at the time, the actual recipient of the dues being remitted to "Local 715" was Local 521.  A document posted on the Local 521 Website titled "Dues Receipts of the year of 2007" showed that, in September, 2007, Local 521 received a payment of dues totaling $21,949 from an account designated "USW Hospitals" ("USW" being a commonly used acronym for "United Stanford Workers," the name given to the chapter of Local 715 that had been assigned to the SHC/LPCH Bargaining Unit).  [Arnold Decl. ¶ 57 & Exh. WW.]  This was the exact amount (rounded to the dollar) of the Hospitals' last dues remittance to "Local 715" for February, 2007, which was $21,949.35.  [Quintel Decl. ¶ 38 & Exh. V.]

• On March 2, 2007, the Hospitals informed "Local 715" that, after the remittance of the dues for February, 2007, the Hospitals would no longer remit dues to "Local 715" absent clarification of its status and the identity of the organization that would be receiving the dues.  [Quintel Decl. ¶ 36 & Exh. U.]  The requested information was not provided, and

7

SFCA_1425613.2

after March 1, 2007, the Hospitals ceased remitting dues.  [Quintel Decl. ¶ 37.]  The Hospitals continued to deduct dues from Bargaining Unit employees' checks, but held the dues in a separate bank account established for that purpose, a procedure that continues to date.  [Quintel Decl. ¶ 37.]

- On June 8, 2007, President Stern issued an "Order Of Emergency Trusteeship."  [Inciardi Decl. Exh. Z.]  That order stated that, because of the Hospitals' "position" that Local 715 had ceased to exist, and the transfer of the bulk of Local 715's former members and resources to Local 521, SEIU was placing "Local 715" under trusteeship, removing its officers, and appointing Bruce W. ("Rusty") Smith as trustee.  The order confirmed that the SEIU's reorganization plan remained in place and that the remaining members of "Local 715" would be "united with other SEIU healthcare members in SEIU United Healthcare Workers – West."  [Inciardi Decl. Exh. Z.]

- Mr. Smith sent a letter to Ms. Quintel on June 14, 2007 informing her of the trusteeship, that the Servicing Agreement would "remain in full force and effect," and that UHW employees would continue to "service" the Hospitals.  [Quintel Decl. ¶ 48 & Exh. FF.]

- Around June 18, 2007, Mr. Arnold learned that Barbara J. Chisholm of the law firm Altshuler Berzon LLP (the "Altshuler Firm") was now representing "Local 715."  Mr. Arnold confirmed this in a conversation with Ms. Chisholm followed by a confirming letter.  [Arnold Decl. ¶ 40 & Exh. FF.]

- To date, the Hospitals have not received any notification that the Altshuler Firm no longer represents "Local 715."  [Quintel Decl. ¶ 57; Arnold Decl. ¶ 40.]

- Since the announcement of the Altshuler Firm's representation of "Local 715," the Hospitals continued to receive correspondence from Weinberg Firm attorneys purporting to act on "Local 715's" behalf in grievance and arbitration matters.  [Arnold Decl. ¶ 49, 55 & 65 & Exh. UU & EEE.]  Weinberg Firm attorneys also appeared in each arbitration

8

SFCA_1425613.2

1    hearing that was held after the appointment of the Altshuler Firm as counsel.  [Arnold

2    Decl. ¶ 46 & 49 & Exh. LL.]

3

4    •    The Hospitals were aware that the Weinberg Firm has historically acted as counsel to

5         UHW and it had previously sent correspondence to the Hospitals representing UHW

6         pursuant to the Servicing Agreement.[Quintel Decl. ¶ 17 & Exh. E.]  The Hospitals

7         became concerned that when the Weinberg Firm acted on behalf of "Local 715," it was

8         actually retained by UHW and acting under authority of the rejected Servicing

9         Agreement.  However, when the Hospitals requested information from "Local 715" on

10        this issue "Local 715" and its purported attorneys either failed to respond or openly

11        refused to respond.  [Arnold Decl. ¶ 49-53 & Exh. NN-RR.]  The Hospitals concluded

12        that the Weinberg Firm was, in fact, representing UHW, and that its appearances on

13        "Local 715's" behalf were made under authority of the rejected Servicing Agreement.

14        Therefore, the Hospitals refused to participate in arbitration proceedings with Weinberg

15        attorneys absent assurances that the appearance was made directly on behalf of "Local

16        715" and not pursuant to the Servicing Agreement.  [Arnold Decl. ¶ 53 & Exh. RR.]

17        Neither the Weinberg Firm nor the Altshuler Firm provided the Hospitals with the

18        requested assurance.

19        The undisputed facts set forth above demonstrate that on or around March 1, 2007, Local

20   715 was dissolved and that it no longer exists.  It is well-established that, where the NLRB

21   certifies a union as the exclusive bargaining representative of an employer's workers pursuant to

22   the NLRA, the employer is not only obligated to bargain with that union, but is prohibited from

23   bargaining with any other union.  *Medo Photo Supply Corporation v. National Labor Relations*

24   *Board*, 321 U.S. 678, 673-674 (1944); *Nevada Security Innovations, Ltd.*, 341 NLRB 953, 955

25   (2004).  Where the certified union has ceased to exist, the employer's bargaining obligation is at

26   an end.  *Brooks v. National Labor Relations Board*, 348 U.S. 96, 98 (1954); *Pioneer Inn*

27   *Associates v. National Labor Relations Board*, 578 F.2d 835, 839 (9th Cir. 1978).

28

9

SFCA_1425613.2

Likewise, where an employer and the certified union negotiate a collective bargaining agreement providing for arbitration of disputes, and the union subsequently ceases to exist, the employer no longer has any obligation to arbitrate because only the union has standing to compel arbitration. *Moruzzi v. Dynamics Corporation Of America*, 443 F.Supp. 332, 336-337 (S.D.N.Y. 1977); *Lorber Industries Of California v. Los Angles Printworks Corporation*, 803 F.2d 523, 525 (9th Cir. 1986) (The obligation to arbitrate "may not be invoked by one who is not a party to the agreement"). Where the certified union has ceased to exist, its former officials or representatives do not have standing to compel arbitration under its name. *Moruzzi, supra*, 443 F.Supp. at 337.

Because Local 715 has ceased to exist, it lacks standing to compel arbitration with respect to the three (3) grievances at issue in the Cases, and the Hospitals are not obligated to arbitrate with "Local 715" it over any of those grievances.

Therefore Judgment shall be entered against Local 715 and in favor of the Hospitals in the Cases and each of the Cases shall be DISMISSED WITH PREJUDICE.

## II.    THE HOSPITALS ARE NOT OBLIGATED TO ARBITRATE WITH UHW OR ITS REPRESENTATIVES

Whether or not Local 715 continues to exist, the Hospitals are not obligated to arbitrate with UHW or UHW's representatives acting pursuant to the Servicing Agreement because the Servicing Agreement is invalid.

The Court finds that the following facts are material and undisputed:

- In 1998, the National Labor Relations Board ("NLRB" or the "Board") issued an order (the "Certification") certifying Local 715 as the exclusive collective bargaining representative of a unit of Hospital employees (the "Bargaining Unit") as set forth in the Certification. [Arnold Decl. Exh. A.]

- Thereafter, the Hospitals and Local 715 engaged in collective bargaining resulting in a series of collective bargaining agreements. The current collective bargaining agreement (the "CBA") became effective on January 20, 2006, and is scheduled to expire on November 4, 2008. [Arnold Decl. Exh. B.]

10

- Article 1 of The CBA contains a "Recognition Clause" which states that, pursuant to the Board's Certification, the Hospitals recognized Local 715 "as the sole and exclusive representative for the purpose of collective bargaining" with respect to Bargaining Unit employees. [Arnold Decl. Exh. B.]

- Article 26 of the CBA contains a grievance and arbitration procedure through which alleged violations of the CBA may be challenged. However, only Local 715 may appeal a grievance to arbitration. [Arnold Decl. Exh. B.]

- Between February 18 and February 20, 2006, Local 715 entered into a "Servicing Agreement" with Service Employees International Union, United Healthcare Workers – West ("UHW"). [Arnold Decl. ¶ 36 & Exh. CC; Inciardi Decl. Exh. EE.]

- The Servicing Agreement provided that UHW would provide certain "professional services" to Local 715 at no cost, including "Representation in the grievance procedure and at arbitration hearings," "Representation at labor-management meetings," and "Assistance to members appearing before the National Labor Relations Board on behalf of the Local 715 Chapter at the Stanford Facility." [Arnold Decl. Exh. CC.]

- The Servicing Agreement further provided that, Local 715 and UHW would take such steps as were necessary to enforce the agreement, including initiating proceedings before the NLRB, in the event that the Servicing Agreement was rejected by the Hospitals." [Arnold Decl. Exh. CC.]

- The Servicing Agreement was to be effective as of March 1, 2006. [Arnold Decl. Exh. CC.]

- On February 28, 2006, Greg Pullman, then Local 715's Staff Director, informed Laurie Quintel, the Hospitals' Director of Employee and Labor Relations, that she should work with an employee of UHW named Ella Hereth in connection with the settlement of

11

[PROPOSED] ORDER GRANTING STANFORD AND LPCH'S
MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1425613.2

grievances and unfair labor practice charges.  [Quintel Decl. ¶ 9.]

• Around the same time, another UHW employee named Rachel Deutsch told Ms. Quintel that UHW would be taking over representation for the Hospitals.  [Quintel Decl. ¶ 10.]

• Ms. Quintel sought clarification from Mr. Pullman, whereupon Mr. Pullman told Ms. Quintel that "Local 715 represents the workers covered by our agreement" but that "Local 715 has asked SEIU UHW to service this unit in many ways on a day-to-day basis."  [Quintel Decl. ¶ 11-12 & Exh. B.]

• Between March and May, 2006, the functions that had formerly been carried out by Local 715 personnel were carried out exclusively by UHW employees.  UHW employees filed grievances on UHW stationery, some of which referred to Bargaining Unit members as "members" of UHW.  [Quintel Decl. ¶ 15 & Exh. D.]  Ms. Hereth sent a letter to Ms. Quintel instructing to "direct all SEIU correspondence" to UHW employees at UHW's San Francisco office.  [Quintel Decl. ¶ 14 & Exh. C.]  On May 22, 2006, Jocelyn Olick, a UHW employee and purported servicing agent under the Servicing Agreement, stated in an e-mail that "I and Ella Hereth do not work for SEIU 715.  SEIU-UHW is doing the representation work here at Stanford Hospital."  [Quintel Decl. ¶ 20 & Exh. H.]  On the same day, Mr. Pullman stated in an e-mail that "Jocelyn Olick, Rachel Deutch and Ella Hereth out of the SEIU UHW San Francisco office are handling all representation matters for SEIU Local 715."  [Quintel Decl. ¶ 20 & Exh. H.]  Ms. Olick also purported to have authority to accept changes to the CBA.  [Quintel Decl. ¶ 21 & Exh. I.]

• On or around March 28, 2006, W. Daniel Boone of the law firm Weinberg Roger & Rosenfeld, which historically represented Local 715, wrote a letter to Laurence R. Arnold, an attorney who represents the Hospitals, which referred to "United Healthcare Workers – West (formerly SEIU, Local 715)."  [Arnold Decl. ¶ 26 & Exh. S.]

• In early April, 2006, UHW employee Phyllis Willett told Ms. Quintel that  when the

12

[PROPOSED] ORDER GRANTING STANFORD AND LPCH'S
MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1425613.2

Hospitals remitted union dues, they needed to provide the social security numbers of the relevant employees to help UHW identify them.  [Quintel Decl. ¶ 16.]

- Around April 17, 2006, Ms. Quintel received a letter from William A. Sokol of the Weinberg Firm in which he stated "I am writing on behalf of SEIU United Healthcare Workers West" and requested that the Hospitals provide information pertaining to Bargaining Unit employees, and the dues deducted from their paychecks.  [Quintel Decl. ¶ 17 & Exh. E.]

- In May and June, 2006, Hospitals informed Local 715 that they did not consent to any transfer of bargaining rights from Local 715 to UHW, and that the Hospitals would not deal with employees of UHW.  [Quintel Decl. ¶ 19 & Exh. G; Arnold Decl. ¶ 32 & Exh. Z.]

- In June, 2006, Hospitals requested information from Local 715 regarding the organization's status and the role of UHW.  [Arnold Decl. ¶ 32 & Exh. Z.]

- On June 9, 2006 the Service Employees International Union ("SEIU" or the "International") issued a document titled "Hearing Officers' Joint Report And Recommendations" (the "Joint Report").  The Joint Report outlined a plan to reorganize various SEIU Locals (the "SEIU Reorganization Plan").  The Joint Report noted, "Local 715 is the certified representative of employees at Stanford and Lucille (sic) Packard Hospitals" but that "UHW is actually servicing employees in these facilities . . . pursuant to servicing agreements."  [Inciardi Decl. Exh. T p. 16.]  The Joint Report concluded that, in order to maximize local union strength, the jurisdiction of various local unions should be changed.  With respect to government employee unions, the report recommended the creation of new local unions, that would absorb "a substantial portion" of the membership of existing local unions, including Local 715.  [Inciardi Decl. Exh. T p. 40.]  The Joint Report also recommended that, "the affiliation of private healthcare units represented by

13

SFCA_1425613.2

Locals 727, 715, and 2028 should be changed to UHW as soon as feasible." [Inciardi Decl. Exh. T p. 65.]

- On June 11, 2006, Andrew L. Stern, International President of SEIU, issued a memorandum to "Affected SEIU Local Unions in California" announcing that SEIU had decided to adopt the recommendations outlined in the Joint Report. The memorandum confirmed that "Private Sector Hospital units currently represented by Locals 535, 707, 715, 2028, and 4988 will merge into UHW." [Quintel Decl. ¶ 23 & Exh. K at p. 4.]

- In mid-August, the Hospitals received copies of the Servicing Agreement in mid August and reviewed it. [Quintel Decl. ¶ 24-25 & Exh. L; Arnold Decl. ¶ 36-38 & Exh. CC-EE.] The Hospitals concluded, based upon the evidence that Local 715 had abdicated its representative duties and assigned them to UHW, that the Servicing Agreement was invalid and rejected it.

- Local 715 was informed of the Hospitals' rejection of the Servicing Agreement on or around August 29, 2006, and was further informed that the Hospitals would not deal with employees of UHW acting pursuant to the Servicing Agreement. [Arnold Decl. ¶ 38 & Exh. EE.]

- In September, 2006, Bargaining Unit employees were asked to ratify the reorganization plan adopted by SEIU by means of a state-wide vote. The balloting material distributed to Bargaining Unit employees expressly stated that "Hospital workers at . . . Stanford/Lucille Packard Children's Hospital . . . will change their affiliation to United Healthcare Workers – West." [Quintel Decl. ¶ 26-27 & Exh. M-N.]

- On January 2, 2007, International President Stern issued an "Order Of Reorganization" to various SEIU locals, including Local 715. [Inciardi Decl. Exh. U.] President Stern ordered that all workers represented by Local 715, with certain exceptions, be "reorganized into SEIU Local 521." President Stern further ordered that "all . . .

14

SFCA_1425613.2

Stanford/Lucille (sic) Packard Hospital workers be, and are hereby, reorganized into SEIU Local UHW." [Inciardi Decl. Exh. U.] Such "reorganization" was to take place as soon as practicable.

- On January 31, 2007, Chief Shop Steward Robert W. Rutledge, stated in an e-mail that, "SEIU 715 no longer exists and a service agreement between the former 715 and UHW has been in place since March first of 2006." [Quintel Decl. ¶ 28 & Exh. O.] Copies of the e-mail were sent to Ms. Olick and UHW employee Kim Tavaglione, neither of whom objected to Mr. Rutledge's statement.

- At a meeting with Ms. Quintel on or around February 2, 2007, Mr. Rutledge repeated his assertion that Local 715 no longer existed. He also stated that Local 715 no longer represented employees at the Hospitals, and that they were now represented by UHW. [Quintel Decl. ¶ 29.]

- In late January, Local 715 prominently posted a statement on its website, located at *http://www.SEIU715.org*, that "We are in the process of transitioning to our new local 521. This web site will be taken down on Feb. 28. On March 1, our new Local's web site *www.seiu521.org* will have your chapter pages and other information." [Quintel Decl. ¶ 30 & Exh. P.]

- Beginning on or around March 1, visitors to Local 715's website could no longer access the former site, but were automatically redirected to the website of Service Employees International Union, Local 521 ("Local 521"), located at http://www.SEIU521.org. Local 521's website contained a prominent statement that five local unions, including Local 715 "have come together . . . by forming one larger, more powerful local." [Quintel Decl. ¶ 32 & Exh. R.] Another page referenced benefits available to "former SEIU Local 715 members." [Quintel Decl. ¶ 32 & Exh. R.]

- On or around March 5, 2007, Local 715's website contained the following statement:

15

SFCA_1425613.2

"Five locals (415, 535, 700, 715, and 817) have come together to cover the North Central region by forming one larger, more powerful local.  On January 2, 2007, our new local received its charter.  On March 1, 2007, the resources of all five locals were transferred to Local 521."  [Quintel Decl. ¶ 40 & Exh. X.]

- As of March 2, 2007, UHW's website, located at http://SEIU-UHW.org, contained an assertion that UHW represented the Hospitals' employees.  [Quintel Decl. ¶ 34 & Exh. S.]  UHW has continued to claim to represent the Hospitals' employees on its website. [Inciardi Decl. ¶ 24 & 29-30 & Exh. C21-C22.]

- The dues deduction authorization forms, by which the individual bargaining unit members authorized deduction and remittance of union dues, authorized remittance of dues specifically to Local 715, and to no other organization.  [Quintel Decl. ¶ 35 & Exh. T.]

- In fact, although it was not known to the Hospitals at the time, the actual recipient of the dues being remitted to "Local 715" was Local 521.  A document posted on the Local 521 Website titled "Dues Receipts of the year of 2007" showed that, in September, 2007, Local 521 received a payment of dues totaling $21,949 from an account designated "USW Hospitals" ("USW" being a commonly used acronym for "United Stanford Workers," the name given to the chapter of Local 715 that had been assigned to the SHC/LPCH Bargaining Unit).  [Arnold Decl. ¶ 57 & Exh. WW.]  This was the exact amount (rounded to the dollar) of the Hospitals' last dues remittance to "Local 715" for February, 2007, which was $21,949.35.  [Quintel Decl. ¶ 38 & Exh. V.]

- On March 2, 2007, the Hospitals informed "Local 715" that, after the remittance of the dues for February, 2007, the Hospitals would no longer remit dues to "Local 715" absent clarification of its status and the identity of the organization that would be receiving the dues.  [Quintel Decl. ¶ 36 & Exh. U.]  The requested information was not provided, and

16

SFCA_1425613.2

after March 1, 2007, the Hospitals ceased remitting dues.  [Quintel Decl. ¶ 37.]  The
Hospitals continued to deduct dues from Bargaining Unit employees' checks, but held the
dues in a separate bank account established for that purpose, a procedure that continues to
date.  [Quintel Decl. ¶ 37.]

- On June 8, 2007, President Stern issued an "Order Of Emergency Trusteeship."  [Inciardi
  Decl. Exh. Z.]  That order stated that, because of the Hospitals' "position" that Local 715
  had ceased to exist, and the transfer of the bulk of Local 715's former members and
  resources to Local 521, SEIU was placing "Local 715" under trusteeship, removing its
  officers, and appointing Bruce W. ("Rusty") Smith as trustee.  The order confirmed that
  the SEIU's reorganization plan remained in place and that the remaining members of
  "Local 715" would be "united with other SEIU healthcare members in SEIU United
  Healthcare Workers – West."  [Inciardi Decl. Exh. Z.]

- Mr. Smith sent a letter to Ms. Quintel on June 14, 2007 informing her of the trusteeship,
  that the Servicing Agreement would "remain in full force and effect," and that UHW
  employees would continue to "service" the Hospitals.  [Quintel Decl. ¶ 48 & Exh. FF.]

- Around June 18, 2007, Mr. Arnold learned that Barbara J. Chisholm of the law firm
  Altshuler Berzon LLP (the "Altshuler Firm") was now representing "Local 715."  Mr.
  Arnold confirmed this in a conversation with Ms. Chisholm followed by a confirming
  letter.  [Arnold Decl. ¶ 40 & Exh. FF.]

- To date, the Hospitals have not received any notification that the Altshuler Firm no
  longer represents "Local 715."  [Quintel Decl. ¶ 57; Arnold Decl. ¶ 40.]

- Since the announcement of the Altshuler Firm's representation of "Local 715," the
  Hospitals continued to receive correspondence from Weinberg Firm attorneys purporting
  to act on "Local 715's" behalf in grievance and arbitration matters.  [Arnold Decl. ¶ 49,
  55 & 65 & Exh. UU & EEE.]  Weinberg Firm attorneys also appeared in each arbitration

17

SFCA_1425613.2

1   hearing that was held after the appointment of the Altshuler Firm as counsel.  [Arnold

2   Decl. ¶ 46 & 49 & Exh. LL.]

3

4   •    Hospitals were aware that the Weinberg Firm has historically acted as counsel to UHW

5   and it had previously sent correspondence to the Hospitals representing UHW pursuant to

6   the Servicing Agreement.[Quintel Decl. ¶ 17 & Exh. E.]  The Hospitals became

7   concerned that when the Weinberg Firm acted on behalf of "Local 715," it was actually

8   retained by UHW and acting under authority of the rejected Servicing Agreement.

9   However, when the Hospitals requested information from "Local 715" on this issue

10  "Local 715" and its purported attorneys either failed to respond or openly refused to

11  respond.  [Arnold Decl. ¶ 49-53 & Exh. NN-RR.]  The Hospitals concluded that the

12  Weinberg Firm was, in fact, representing UHW, and that its appearances on "Local

13  715's" behalf were made under authority of the rejected Servicing Agreement.

14  Therefore, the Hospitals refused to participate in arbitration proceedings with Weinberg

15  attorneys absent assurances that the appearance was made directly on behalf of "Local

16  715" and not pursuant to the Servicing Agreement.  [Arnold Decl. ¶ 53 & Exh. RR.]

17  Neither the Weinberg Firm nor the Altshuler Firm provided the Hospitals with the

18  requested assurance.

19      It has been recognized that, under the National Labor Relations Act, one union may use

20  agents or experts from another union to act on its behalf in formal labor negotiations.  *Goad*

21  *Company*, 333 NLRB 677, 679 (2001).  However, a union may not use the purported

22  appointment of agents to effectuate a *de facto* change of the bargaining representative, and under

23  such circumstances, the employer is under no obligation to deal with the purported agents.

24  *Goad, supra*, 333 NLRB at 680 (employer not obligated to deal with purported agent where

25  certified union "did not simply enlist the aid of an agent . . . it transferred its representational

26  duties and responsibilities.")  See also *Sherwood Ford, Inc*, 188 NLRB 131, 133-134 (1971)

27  (Board disregarded agency agreement between unions as "a device, subterfuge, or stratagem"

28

18

SFCA_1425613.2

1  designed to accomplish a *de facto* change of the bargaining agent.).

2         The undisputed facts set forth above demonstrate that, notwithstanding the content of the

3  Servicing Agreement, in practice, "Local 715" and UHW have used the Servicing Agreement as

4  a "device, subterfuge, or stratagem" to, in effect, transfer representative status to UHW.  Rather

5  than serving as a mere agent, as called for in the Servicing Agreement, UHW has sought to

6  completely supplant Local 715 with respect to every aspect of collective bargaining, leaving

7  Local 715 as the representative in name only.  Given this, the Hospitals are not obligated to

8  arbitrate or otherwise deal with employees and representatives of UHW, including Weinberg

9  Firm attorneys, acting pursuant to the invalid Servicing Agreement.  Thus, as a matter of law,

10 judgment shall be entered in the favor of the Hospitals and each of the Cases shall be dismissed

11 with prejudice.

12

13        **IT IS ORDERED**, for the foregoing reasons, that the Hospitals' motion for summary

14 judgment or, in the alternative, summary adjudication of claims or defenses in Case Nos. 5:08-

15 CV-00216 JF, 5:08-CV-01726 JF, and 5:08-CV-01727 JF is **GRANTED** and that judgment will

16 be entered against Local 715 and in favor of the Hospitals in each of the Cases.  Further, **IT IS**

17 **ORDERED** that each of the CASES shall be DISMISSED with prejudice.

18

19 Dated:

20

21                              By: _____

22                                  HON. JEREMY FOGEL
                                    JUDGE OF THE UNITED STATES
23                                  DISTRICT COURT FOR THE NORTHERN
                                    DISTRICT OF CALIFORNIA

24

25

26

27

28

[PROPOSED] ORDER GRANTING STANFORD AND LPCH'S
MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1425613.2